**PHILCO CORPORATION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

National Broadcasting Company, Inc., Intervenor.

No. 14166.

United States Court of Appeals District of Columbia Circuit.

Argued April 16, 1958.

Decided June 19, 1958.

1. Appellant requested this court to pass on both his standing to sue and on the merits.

Mr. Henry B. Weaver, Jr., Washington, D. C., with whom Messrs. Thomas M. Cooley, II, and Quinn O'Connell, Washington, D. C., were on the brief, for appellant.

Mr. Joel Rosenbloom, Counsel, F. C. C., with whom Messrs. Warren E. Baker, Gen. Counsel, F. C. C., and Richard A. Solomon, Asst. Gen. Counsel, F. C. C., were on the brief, for appellee.

Mr. John F. Sonnett, New York City, with whom Mr. James E. Greeley, Washington, D. C., was on the brief, for intervenor.

Before FAHY and WASHINGTON, Circuit Judges, and MADDEN, Judge, United States Court of Claims.*

FAHY, Circuit Judge.

This is an appeal by the Philco Corporation from dismissal by the Federal Communications Commission of Philco's protest of the grant without a hearing of the applications of the National Broadcasting Corporation, intervenor in this court,[1] for renewal of the licenses of its television broadcast station WRCV-TV, of certain functions auxiliary to that sta-

tion, and of its radio broadcast station WRCV, all in Philadelphia. The Commission dismissed the protest on the ground that Philco lacked standing as a "party in interest" within the meaning of section 309(c) of the Federal Communications Act.[2]

Philco is not in the industry of broadcasting by either television or radio. It is a manufacturer of radio and electronic equipment. In this business it is in competition with Radio Corporation of America,[3] the sole stockholder of NBC. Philco in its protest alleged that RCA had been receiving advertising advantages from NBC over the stations above referred to, that NBC's ownership and operation of television stations are basic prerequisites to its mode of operation as a network, and that its "option time" and "must buy" practices as a network injure Philco in its capacity as an advertiser seeking to use the television medium. Philco sought a hearing on public interest issues involving trade practices of RCA and NBC that allegedly violated antitrust laws and in other ways reflected on the character qualifications of NBC as a licensee. Its protest also claimed, *inter alia*, that the renewals would result in undue concentration of control of the media of mass communication in the greater Philadelphia area.

We are not now concerned with these allegations of Philco as to why in the public interest the license renewals should not be granted, or with the merits of other controversies between Philco on the one hand and NBC and RCA on the other. Our question is only whether Philco has standing by filing a protest to advance reasons which might influence the Commission in making a decision in the public interest with respect to the renewals. Indeed, assuming such standing we are not now concerned even with the sufficiency of Philco's protest to warrant a hearing, a question not yet passed upon by the Commission.

---

\* Sitting by designation pursuant to the provisions of Sec. 291(a), Title 28 U.S. Code.

1. Referred to as NBC.

2. 48 Stat. 1085 (1934), as amended, 47 U.S.C. § 309(c) (Supp. V, 1958), 47 U.S. C.A. § 309(c).

3. Referred to as RCA.

By the "option time" and "must buy" devices Philco alleges that NBC had rendered the sponsorship of network programs in preferred listening periods "prohibitively expensive" and had foreclosed the use of those periods to Philco on any non-network basis other than spot advertising, thus depriving it of a choice as to the markets in which it might wish to concentrate sponsored-program television advertising, using NBC affiliates, even if it could meet NBC's charges, which it characterizes as "exorbitant."

We need not reach the question whether NBC's "option time" and "must buy" requirements are closely enough related to the renewals in question to give Philco standing to protest. For there is another basis for standing which seems to us sufficient. NBC as we have said is a wholly owned subsidiary of RCA. RCA, in the words of Philco's protest, is "in direct competition" with Philco "as a manufacturer" and the operation of the Philadelphia stations by NBC strengthens RCA's competitive position to such a degree as to cause a direct economic effect on Philco. Philco alleges that the Philadelphia stations have been aiding RCA in its competition with Philco by broadcasting certain programming which features RCA and grants it advertising preferences not available to Philco and other competitors of RCA. The Commission in its decision states the matter as follows:

"The protestant claims that such 'preferential publicity' is exemplified by (1) NBC owned stations inserting the phrase 'a service of RCA' during station identification breaks; (2) 'news' stories broadcast by NBC stations relate to RCA activities 'which other news agencies do not find justified by their news value'; (3) broadcasts of NBC color television programs 'again and again' advise the public that RCA is 'the

pioneer and developer of compatible color'; (4) the 'Today' program, a NBC Network presentation, emphasizes its origination, when that is a fact, in 'RCA Exhibition Hall' where RCA products are allegedly on display; and (5) NBC stations incorporate 'RCA' and 'RC' into their call letters, thereby giving RCA an 'amount and type of advertising which Philco (and other competing manufacturers) cannot hope to obtain by however a large expenditure.' "

■ We need not decide whether the competitive situation between Philco and RCA would have given Philco standing to protest the original grants of the licenses to NBC. The present applications are for renewals and come before the Commission after NBC, it is alleged, has been actually using the facilities injuriously to Philco in the manner described by the Commission. We think the actual use of the facilities in this manner by NBC has created a situation that gives rise to standing in Philco to file its protest and, if the protest is found legally sufficient, to advance the alleged antitrust and other practices for consideration by the Commission in passing upon the renewal applications.

■■ Likelihood of economic injury, held in F.C.C. v. Sanders Bros. Radio Station, 309 U.S. 470, 642, 60 S.Ct. 693, 84 L.Ed. 869, to give standing under section 402(b) [4] as a "person aggrieved or whose interests are adversely affected" has not before arisen in the present context. Drawing the "party in interest" [5] line is a difficult process. Commission and courts are called upon to exercise a judgment upon the facts of cases as they arise. On the one hand sufficient breadth must be given to "party in interest" to permit those seriously affected to participate in the administrative and judicial proceedings, without on the other hand

4. 48 Stat. 926 (1934), as amended, 47 U.S.C. § 402(b) (1952).

5. "A 'party in interest' is one who is 'aggrieved or whose interests are adversely affected'. § 402(b). Camden

Radio, Inc., v. Federal Communications Commission, 94 U.S.App.D.C. 312, 220 F. 2d 191." Metropolitan Television Co. v. United States, 95 U.S.App.D.C. 326, 327, 221 F.2d 879, 880.

placing the proceedings beyond control of the public tribunals. See National Broadcasting Co. v. F.C.C., 76 U.S.App. D.C. 238, 241, 132 F.2d 545, 548, affirmed 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374. Here the likelihood of substantial injury to Philco due to the competitive advertising advantages secured by RCA seems to us about as real as the circumstances held to give standing in National Coal Ass'n v. F.P.C., 89 U.S.App.D.C. 135, 191 F.2d 462, and in Reade v. Ewing, 2 Cir., 205 F.2d 630, and to bring this case within the principles of Associated Industries v. Ickes, 2 Cir., 134 F.2d 694 [6] National Broadcasting Co. v. F.C.C., supra, and United States Cane Sugar Refiners' Ass'n v. McNutt, 2 Cir., 138 F.2d 116. See, also, City of Pittsburgh v. F.P.C., 99 U.S.App.D.C. 113, 237 F.2d 741.

■ We should suppose, to illustrate by an analogy, that if a department store operated television and radio stations so as to obtain substantial preferential advertising advantages over a like store in the community, this competitor would be a party in interest who could protest renewal of the licenses and bring public considerations to bear upon renewal applications. In a very real sense the competitor would be aggrieved or adversely affected. See note 5, supra. Of course the public considerations advanced by such a party, as distinct from the reasons which gave rise to standing, must stand on their own feet under the criteria which govern the Commission in passing upon the merits of the applications.

Our decision gives standing to a competitor in the position of Philco only to protest a renewal after it is known that licensed facilities are being used by the competing manufacturer directly to obtain a preferential economic advantage over the protestant. Furthermore, even in those circumstances the standing here is to protest only with respect to renewal of a license of a station wholly owned or controlled by the competitor, which would not often be the case. We leave other situations for other cases.

As already indicated, we do not pass upon the sufficiency of the protest, which must first be considered by the Commission.

Reversed and remanded.

MADDEN, Judge (dissenting).

I cannot agree with the decision of the Court. I think it represents an act of generosity with regard to the time and energy of the Federal Communications Commission (FCC), which is completely unjustified. I think that there is not even a possibility that the further proceedings which this decision imposes upon the FCC will result in anything useful.

The basis for standing for Philco, which the Court holds to be adequate, is the fact that it is a manufacturer of electrical equipment, and that RCA, NBC's sole stockholder, is a manufacturer of the same kind of equipment and therefore a competitor of Philco, and that NBC is using the licenses here in question to the economic injury of Philco as a competitor of RCA.

If Philco has standing, on the basis assigned by the Court, every one of the numerous other manufacturers of electrical equipment has standing. And Philco and all of the others will have standing in every case in which NBC applies for a renewal of its license for any of its several stations.

The basis for standing approved by the Court for Philco is the naked fact that it, like NBC's sole stockholder, RCA, manufactures electrical equipment, and that NBC places the name of RCA prominently before the public in the several ways recited in the Court's opinion. The reiteration of the name of RCA, thus making it familiar to the listening public, even though the products manufactured by RCA were not mentioned, must have advertising value, or the precious seconds required would not be so used.

6. In Associated Industries standing was opened to every consumer of coal.

The Court says that the question of economic injury giving standing "has not before arisen in the present context." That is true. The context, as I see it, is that of competitors in a field which has no relation to the business which is the subject of the public regulation in question. The FCC has nothing to do with the manufacture of electric toasters and washing machines and nothing here relevant to do with the manufacture of television and radio sets. NBC advertises RCA. If RCA pays NBC, it is just transferring money from one pocket to another, since it owns NBC. If it does not pay NBC, it as owner of NBC, loses the revenue which it would receive if it sold the seconds in question to another advertiser, Philco, e. g.

Philco does not allege that it cannot buy time on NBC's Philadelphia station, or NBC's network, at the same price as any other advertiser. If it cannot afford to pay the price, or thinks the service is not worth the price, it is in the same position that all of us are in when we make our choices as to how to spend our funds.

In none of the cases cited by the Court was the alleged economic injury unrelated to the subject which was regulated by the public tribunal. In Federal Communications Commission v. Sanders Radio Station, 1940, 309 U.S. 470, 642, 60 S.Ct. 693, 84 L.Ed. 869, it was one radio station against another. In Reade v. Ewing, 2 Cir., 1953, 205 F.2d 630, it was a consumer complaining of a producer of synthetic vitamins. In National Coal Ass'n v. Federal Power Commission, 89 U.S.App.D.C. 135, 191 F.2d 462, it was coal against gas, and the legislative history of the statute showed that Congress expected the Federal Power Commission to consider the effect upon the interests of the producers of competing fuels of the licensing of extensions of natural gas pipe lines. In City of Pittsburgh v. Federal Power Commission, 99 U.S.App.D.C. 113, 237 F.2d 741, it was gas against oil in a context similar to that in National Coal Ass'n, supra. In Associated Industries v. Ickes, 2 Cir.,

1943, 134 F.2d 694 it was consumers of coal against the authority having the power to fix the price of coal. In National Broadcasting Company v. Federal Communications Commission, 76 U.S. App.D.C. 238, 132 F.2d 545, affirmed 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374, it was radio station against radio station.

The problem is really the broad one of whether a radio or television network should be permitted to be owned by the owner of any other business, whether that be the electrical appliance business, the air transportation business, the newspaper business, or any other. So long as such ownership is permitted, it would seem absurd to conclude that the owner could not advertise over his own facilities, though his competitors could do so. The solution of this broad problem of station or network ownership is not to be found in revoking, or refusing to renew the license of NBC's Philadelphia station. It must be accomplished by generally applicable legislation, or by regulation, if the Commission has the power to issue such a regulation. It should be done after due hearing properly announced, at which hearing the numerous persons and organizations interested would have the opportunity to present their views.

The "option time" and "must buy" practices of NBC, as to which the Court finds it unnecessary to decide, seem to me to present no serious problem with regard to standing. These do not even relate to Philco as a manufacturer of electrical equipment in competition with NBC's owner as such a manufacturer. If Philco has standing because of these practices so does every enterprise which wants to advertise on television, and finds it expensive to do so, whether the enterprise sells cigarettes, soap, airplane tickets or rides on a bus. The court might, I think, have safely fenced out this infinite number of enterprises which might claim standing.

I am not willing to accompany the Court into the new field which it now enters, and must therefore respectfully dissent.