**PHILCO CORPORATION (PHILCO), a Pennsylvania corporation, Appellant**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

National Broadcasting Company, Inc., Intervenor.

No. 15891.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 1, 1961.

Decided June 29, 1961.

Mr. Henry B. Weaver, Jr., Washington, D. C., with whom Messrs. Quinn O'Connell and Armistead W. Gilliam, Jr., Washington, D. C., were on the brief, for appellant.

Mr. Max D. Paglin, now General Counsel, Federal Communications Commission, with whom Mr. John L. FitzGerald, General Counsel of the Federal Communications Commission at the time the brief was filed, and Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. Bernard G. Segal, Philadelphia, Pa., of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of court, with whom Messrs. Samuel D. Slade and Howard Monderer, Washington, D. C., were on the brief, for intervenor.

Before EDGERTON, FAHY, and WASHINGTON, Circuit Judges.

EDGERTON, Circuit Judge.

Without a hearing, the Federal Communications Commission granted National Broadcasting Company's (NBC) application for renewal of its broadcasting license for station WRCV-TV in Philadelphia. Philco Corporation, which manufactures various kinds of equipment in competition with NBC's parent, Radio Corporation of America (RCA), protested the grant. Philco charged that renewal of NBC's license was contrary to the public interest and asked for an evidentiary hearing. The Commission dismissed the protest, after oral argument but without an evidentiary hearing, and Philco appeals.[1] We think the Commission should have held the hearing.

Philco's protest attacks NBC's character qualifications. It traces what it calls the "consistent course towards monopoly" of NBC's parent, RCA. It charges that NBC affords RCA "a vast amount of preferential publicity" not available to Philco or other competitors of RCA and so is "directly instrumental in expanding the adverse effects of RCA's [monopoly] practices". It includes a digest of Congressional committee reports which it says "raise the gravest questions as to the propriety of a number of NBC's practices." It describes a number of pending antitrust suits against NBC and RCA.

Section 309(c) of the Federal Communications Act made "any instrument of authorization" granted without a hearing subject to protest for thirty days. It did not require an evidentiary hearing on the protest unless it "specif[ies] with particularity the facts relied upon by the protestant as showing that the grant was improperly made or would otherwise not be in the public interest." Even if the protest meets that test, no evidentiary hearing is required if "the Commission, after affording protestant an opportunity for oral argument, finds, for reasons set forth in the decision, that, even if the facts alleged were to be proven, no grounds for setting aside the grant are presented." 47 U.S.C. § 309(c).

■■■ The Commission found that Philco's review of RCA's past practices. "cannot be deemed to show a course toward monopoly. * * * These matters are not new to the Commission. Philco merely is reiterating matters long known to us, some of which have been disposed of by official Commission action and others which we have concluded do not warrant Commission action. The great bulk of such matters occurred from one to three decades ago and protestant has demonstrated nothing to warrant their consideration again at this late date."[2] We think it was error to divorce the alleged background from Philco's allegations of current monopolistic and other improper conduct. Whether or not the background alone required a hearing, the charges of new misconduct gave it new significance. The Commission is not foreclosed by its former action or inaction. Wallace Corp. v. National Labor Relations Board, 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216, illustrates the principle. The Court said: "the Board * * ordinarily will respect the terms of a settlement agreement approved by it. It has consistently gone behind such agreements, however, where subsequent events have demonstrated that efforts at adjustment have failed to accomplish their purpose, or where there has been a subsequent unfair labor practice." 323 U.S. at page 254, 65 S.Ct. at page 241.

1. We had reversed the Commission's previous action in dismissing the protest on the ground that Philco lacked standing. Philco Corp. v. Federal Communications Commission, 103 U.S.App.D.C. 278, 257 F.2d 656, certiorari denied sub nom. National Broadcasting Co. v. Philco Corp., 358 U.S. 946, 79 S.Ct. 350, 3 L.Ed.2d 352.

2. Although the Commission said "certain of the matters do not meet the particularity requirement of Section 309(c)", we do not understand it to have found that the protest as a whole failed to allege a "course towards monopoly" with the required particularity.

In the belief that it concerned only Philco's standing to protest, the Commission failed to consider Philco's charge that NBC gave preferential publicity to RCA. We think this also was error. In connection with Philco's other allegations, unfair or harmful competition might be found to show that NBC lacks the character qualifications for a license.[3] The statement in the protest that the preferential publicity is "instrumental in expanding the adverse effects of RCA's [monopoly] practices" links the publicity charge to character.

The Commission found other charges of current improper conduct insufficient because Philco "failed to adopt as its own and offer to prove" either the charges in the antitrust suits or the practices described by the Congressional committees. But § 309(c) of the Act does not require formal offers of proof. We think it assumes that one who protests thereby offers to prove his charges. It provides that "with respect to issues resulting from facts set forth in the protest and not adopted or specified by the Commission, on its own motion, both the burden of proceeding with the introduction of evidence and the burden of proof shall be upon the protestant."[4]

We think the protest alleges present misconduct with the particularity the statute requires. It says NBC gives RCA "preferential publicity" in that NBC broadcast stations (1) repeatedly remind the public that it is receiving "a service of RCA" and that RCA is "the pioneer and developer of compatible color", (2) carry "news" stories publicizing RCA "which other news agencies

do not find justified by their news value", and (3) incorporate RC and RCA into their call letters; also because "such programs as 'Today' emphasize, when that is the fact, that their place or origin is in the 'RCA Exhibition Hall' where RCA products are always on display." The protest says the Congressional committee reports disclose "features of NBC's operations" which include the following: "Requiring advertisers to order all of the NBC-owned television stations plus certain favored affiliated stations * * *"; "Retaining under its contracts the power to control affiliated stations' time and substitute its decision as to programming for that of the licensee in the latter's own community * * *"; "giving affiliated stations first call on network programs in their communities * *"; discriminating "among affiliates in the compensation paid for carrying its programs and among advertisers in the rates it charges them"; and maintaining "exclusive arrangements with sources of foreign news film." Philco's summary of the antitrust complaints is phrased more generally but includes charges that RCA and/or NBC conspired to monopolize radio and television research, patents and patent licensing; production, distribution and use of musical compositions through Broadcast Music, Inc.; and exhibition of a television program "Fashion Show".[5]

A protestant need not plead his evidence. We are not "to measure the requirement of Section 309(c) by the technicalities of pleading formerly applicable in civil litigation. What is required is merely an articulated statement

---

3. Similar conduct justified denial of a broadcast license in Mansfield Journal Co. v. Federal Communications Commission, 86 U.S.App.D.C. 102, 180 F.2d 28.

4. The Commission's view that with respect to antitrust violations Philco only alleged "the pendency of certain litigation" is the less tenable because Philco was itself a plaintiff in one of the suits. Philco's statement in its brief to the Commission that it was "offering to prove those charges" showed its intention and should have dispelled any doubt. It was not, as

the Commission thought, an "untimely pleading" or "new factual allegations".

5. The Commission found that the material from the Congressional committee reports was "unsupported by the requisite allegations stating with particularity the facts relied upon to show that the grant is not in the public interest." It thought there was a "serious question" whether the subject matter of the antitrust suits was alleged with sufficient particularity, but did not resolve this issue.

of some fact or situation which would tend to show, if established at a hearing, that the grant of the license contravened public interest, convenience and necessity, * * *." [6] Federal Broadcasting System v. Federal Communications Commission, 96 U.S.App.D.C. 260, 263, 225 F.2d 560, 563. " 'the Commission might infer from the fact that the applicant had in the past tried to monopolize radio, or had engaged in unfair methods of competition, that the disposition so manifested would continue and that if it did it would make him an unfit licensee.' " National Broadcasting Co. v. United States, 319 U.S. 190, 222, 63 S.Ct. 997, 87 L.Ed. 1344. Cf. Mansfield Journal Co. v. Federal Communications Commission, 86 U.S.App.D.C. 102, 188 F.2d 28. The Commission has said "only those persons should be licensed who can be relied upon to operate in the public interest, and not engage in monopolistic practices. When passing upon applications of persons who have engaged in monopolistic practices in other industries, the Commission must be concerned as to whether such persons would also engage in monopolistic practices in radio if they were given a license. Their conduct in other fields is obviously a matter which the Commission must consider in determining whether they possess the requisite qualifications as a licensee." Report on Uniform Policy as to Violation by Applicants of Laws of the United States (Docket 9572), 1 Pike and Fisher RR 91:495, 91:500 (1951).

 The Commission's renewal of NBC's license was "without prejudice to whatever action the Commission may deem appropriate at such time as presently pending antitrust actions involving RCA and NBC may be terminated." But competitive practices may make an applicant unworthy whether or not they violate the antitrust laws. Mansfield Journal Co. v. Federal Communications Commission, 86 U.S.App.D.C. at page 107, 180 F.2d at page 33. "Nothing in the provisions or history of the Act lends support to the inference that the Commission was denied the power to refuse a license to a station not operating in the 'public interest,' merely because its misconduct happened to be an unconvicted violation of the anti-trust laws." National Broadcasting Co. v. United States, 319 U.S. at page 223, 63 S.Ct. at page 1012. The purpose of the protest section of the Act "is to search out the public interest." Hall v. Federal Communications Commission, 99 U.S.App.D.C. 86, 90, 237 F.2d 567, 571. Determination of the public interest cannot be postponed pending the outcome of law suits.

 We need not consider whether other allegations in the protest were in themselves sufficient to require an evidentiary hearing. The Commission will be "free to consider any issue bearing on the qualifications of the licensee or the required finding of public interest, convenience and necessity * * the Commission should not conclude its hearing until it has built up a record sufficient to support its final conclusions." Federal Broadcasting System v. Federal Communications Commission, supra, 96 U.S.App.D.C. at pages 264, 265, 225 F.2d at pages 564, 565. Cf. Clarksburg Publishing Co. v. Federal Communications Commission, 96 U.S.App.D.C. 211, 225 F.2d 511. The Commission may if it sees fit combine the required hearing on Philco's protest with other hearings concerning the license for station WRCV-TV.

Reversed.

6. "or that the licensee was technically or financially unqualified, contrary to the Commission's initial finding."