**SMITH & SOLOMON TRUCKING COMPANY, Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

and

**C. I. WHITTEN TRANSFER COMPANY, Intervening Defendant.**

Civ. No. 237–66.

United States District Court
D. New Jersey.

June 20, 1966.

244

Davidson, Miniutti & Nester, by Joseph Nester, Jersey City, N. J., Zelby & Burstein, New York City, by Herbert Burstein, New York City, of counsel, for plaintiff.

David M. Satz, Jr., U. S. Atty., by Jonathan Kohn, Asst. U. S. Atty., Newark, N. J., Edwin M. Zimmerman, Acting Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for defendant United States of America.

Robert W. Ginnane, Gen. Counsel, by Jerome Nelson, Atty., I. C. C., Washington, D. C., for defendant Interstate Commerce Commission.

Herman B. J. Weckstein, Newark, N. J., by William T. Croft, Washington, D. C., for intervening defendant C. I. Whitten Transfer Co.

Before McLAUGHLIN, Circuit Judge, and WORTENDYKE, and AUGELLI, District Judges.

AUGELLI, District Judge:

In this action, plaintiff Smith & Solomon Trucking Company (S. & S.), seeks to set aside and enjoin enforcement of certain orders of defendant Interstate Commerce Commission (Commission) that resulted in the grant of a certificate of public convenience and necessity to intervening defendant C. I. Whitten Transfer Company (Whitten), in a proceeding entitled C. I. Whitten Transfer Company Extension—Simsbury, Conn., Docket No. MC–47142 (Sub–No. 86), and to have said certificate declared null and void. The United States of America is joined as a statutory party defendant under 28 U.S.C.A. § 2322. Jurisdiction is invoked under 28 U.S.C.A. §§ 1336, 2321–2325, and 5 U.S.C.A. § 1009(e). This three-judge court has been convened pursuant to 28 U.S.C.A. § 2284 for the purpose of hearing and determining the case.

Both S. & S. and Whitten are common carriers by motor vehicle, operating under certificates of public convenience and necessity issued by the Commission, and both carriers have authority to transport, in interstate commerce, explosives and other dangerous articles. The record, as it comes to us, reveals the following:

On March 3, 1965, Whitten filed with the Commission an application to extend an existing operation so as to enable it, as a common carrier by motor vehicle, to transport over irregular routes, Class A, B, and C explosives and blasting supplies, materials and agents, between Simsbury, Connecticut, and points in Massachusetts, New Jersey, New York, Pennsylvania and Vermont. The application had attached thereto a number of appendices setting forth the number of motor vehicles intended for use in the proposed operation; a statement of applicant's current finan-

cial condition; a map showing applicant's then existing authority and proposed extension thereof; and copies of all certificates, with their subnumbers, that had been issued to applicant by the Commission.

Notice of the Whitten application [1] was published in the Federal Register on March 25, 1965 (30 FR 3897), with an announcement at page 3894 (30 FR 3894) that the [Whitten and other] applications there published would be governed by the Commission's Special Rule 1.247 [2] (49 CFR 1.247), and that a protest to the granting of an application "must be filed with the Commission within 30 days after date of notice of filing of the application is published in the FEDERAL REGISTER." The announcement further stated that the failure "seasonably to file a protest will be construed as a waiver of opposition and participation in the proceeding."

No protests were filed to the Whitten application within the prescribed 30 day period, whereupon the Commission, by order dated May 6, 1965, directed that the application be handled under the Commission's modified procedure, and that the applicant comply with the provisions of Rules 1.45 to 1.54, inclusive, of the Commission's General Rules of Practice.[3]

The order then fixed June 16, 1965, as the date on or before which Whitten was required to file verified statements in support of its application. Pursuant to the Commission's order of May 6, 1965, Whitten filed with the Commission, on May 13, 1965, the sworn statement of its vice president and general manager in support of its application, accompanied by the sworn statement of a supporting shipper, The Ensign-Bickford Company (Ensign-Bickford), located in Simsbury, Connecticut.

The Whitten statement recited that its application was filed at the request of Ensign-Bickford; that the latter had experienced difficulty in interlining shipments, particularly small shipments; that other carriers having authority to transport explosives had little or no interest in this type of operation; that Ensign-Bickford required a complete service to handle its full line of products; that Ensign-Bickford indicated that its shipments would range from small, less than truckload, to full, truckload shipments, of both straight and mixed classes of explosives, and also mixed shipments of blasting supplies and materials; that if additional equipment was needed to handle the Ensign-Bickford shipments, such additional equipment would be ob-

---

1. As published in the Federal Register, notice of the application read as follows:
"No MC47142 (Sub-No. 86) filed March 3, 1965. Applicant: C. I. WHITTEN TRANSFER COMPANY, a corporation, 200 19th Street, Huntington, W. Va. Authority sought to operate as a *common carrier*, by motor vehicle, over irregular routes, transporting: *Classes A, B, and C explosives*, and *blasting supplies, materials, and agents*, between Simsbury, Conn. and points in Massachusetts, New Jersey, New York, Pennsylvania, and Vermont." (*Note*: the underlined words appeared italicized in the notice as published.)

2. Special Rule 1.247 consists of a number of paragraphs. Paragraph (c) (1) of said Rule, so far as is here pertinent, provides that "[n]otice of the filing of applications to competitors and other interested persons will be given by publication of a summary of the authority sought in the FEDERAL REGISTER. * * *

No other notice by applicants to interested persons is required * * *." Paragraph (d) (1) states that "Protests to the granting of an application shall be filed with the Commission within 30 days after the date notice of the filing of the application is published in the FEDERAL REGISTER." Paragraph (d) (2) recites that "Failure seasonably to file a protest will be construed as a waiver of opposition and participation in the proceeding." And paragraph (e) (2) provides that "Proceedings in which no protests are filed within 30 days after publication of notice in the FEDERAL REGISTER, and which are not assigned for oral hearing, will be determined on the basis of verified statements submitted by applicant."

3. Rules 1.45 to 1.54, relating to the Commission's shortened and modified procedure, are found in 49 CFR 1.45 et seq. No contention is made that Whitten failed to comply with said rules.

tained; and, likewise, that if additional terminal locations were required in the territory sought in the Whitten application, that such terminals would be established and maintained as required. The statement then concluded by saying that the Whitten "application was made for a non-radial, irregular route authority, which, by itself and when tacked with the existing authority of C. I. Whitten Transfer Company, would offer the complete service requested by the shipper." Annexed to the statement were exhibits showing Whitten's then existing permanent authority and the proposed extension thereof, a balance sheet of its current financial condition, a list of the equipment operated by it, and the comprehensive safety program under which Whitten operations were conducted.

The supporting Ensign-Bickford statement recited that the company had been in the business of manufacturing and distributing various items of explosives and blasting supplies for over 100 years; that it had become engaged in the production and distribution of new commodities for use by the aerospace industry and several departments of the United States Government; that after investigating all modes of transportation, it found a real need for a single line specialized motor carrier capable of giving a complete service in the transportation of straight and mixed loads of different classes of explosives, blasting supplies and materials between points in the eastern United States; that in order to compete on even terms with other manufacturers in this specialized field it was essential that economical and efficient transportation services be made available to it by a motor carrier experienced and knowledgeable in handling explosives; that Whitten possessed the necessary qualifications and was fully capable of servicing the requirements of Ensign-Bickford; that it supported the

Whitten application and would use the service if said application was granted. The same statement then referred to the need for an irregular route, non-radial carrier and stated that if Whitten was granted the authority sought in its application, "it will be able to, through tacking and interchange, give Ensign-Bickford an excellent interline as well as single line coverage of territory, to, from and between points presently requiring service, and also points to which service will be required in the immediate future." The statement concluded with an estimate that the anticipated total annual volume of shipments by Ensign-Bickford, of all commodities, would be in excess of 10,-000,000 pounds.

In due course, the Whitten application was considered by the Commission, by its Operating Rights Board No. 1. In its order of May 20, 1965 (service date May 26, 1965), the Board noted that the application was unopposed, did not involve the taking of testimony at a public hearing, or the submission of evidence by opposing parties in the form of affidavits, and that the public interest would best be served by disposing of the matter without issuance of a report and recommended order.[4] The Board further noted that the evidence submitted in the form of verified statements in support of the application amply warranted the grant of authority requested by Whitten. Then followed the Board's finding:

"That the present and future public convenience and necessity require operation by applicant, in interstate or foreign commerce, as a common carrier by motor vehicle, over irregular routes, of Classes A, B, and C explosives, and blasting agents, blasting materials, and blasting supplies, between Simsbury, Conn., and points in Massachusetts, New York, New Jersey, Pennsylvania, and Vermont; that applicant is fit,

4. The parties differ as to whether the order of May 20 is a "recommended" or "final" order. Plaintiff treats it as a recommended order, whereas defendants say it is a final order, subject only to reconsideration in accordance with applicable rules of the Commission. By its very language the order does appear to be a final one. However, in view of the ultimate disposition of this case made by the Commission, we think it is immaterial whether the order be deemed "recommended" or "final".

willing, and able properly to perform such service and to conform to the requirements of the Interstate Commerce Act and the Commission's rules and regulations thereunder; [and] that an appropriate certificate should be issued, * * *."

The order, by its terms, became effective on the date thereof, May 20, 1965.

■■ S. & S. now enters the picture for the first time. By letter dated June 21, 1965, S. & S. informed the Commission of its intention to intervene in the Whitten proceeding. On July 1, 1965, it filed with the Commission a petition praying for a waiver of rules, for leave to intervene, and for permission to file an attached petition for reconsideration of the May 20 order and oral hearing. Since more than 30 days had elapsed since publication of notice of the Whitten application in the Federal Register on March 25, 1965, S. & S. sought to explain its failure to file a timely protest by alleging that the operations proposed by Whitten under the May 20 order went far beyond the activities S. & S. could reasonably anticipate from the wording of the Whitten application or from the statement submitted by the supporting shipper, Ensign-Bickford. S. & S. claimed that Whitten intended a non-radial operation, whereas the Whitten application was reasonably susceptible of the interpretation put upon it by S. & S. that only a radial operation was involved.[5] Another reason urged in support of intervention was the alleged lack of sufficient notice of Whitten's intention to tack or join its newly acquired authority with that already possessed by it. S. & S. also stated that it refrained from protesting the Whitten application "out of an honest desire to avoid burdening the Commission or appearing to be quarrelsome * * *." Specifically, the relief sought by S. & S. was limited to a request that the order of May 20 be modified to provide for radial operation only, and to prohibit joinder or tacking by Whitten of its newly acquired authority with pre-existing authority.[6]

We now digress to point out that prior to the filing of the S. & S. petitions on July 1, 1965, Ensign-Bickford, by letter dated June 4, 1965, requested the Commission's permission to withdraw its supporting statement of the Whitten application, giving as a reason therefor that "new developments" necessitated a reappraisal of its motor carriage service. Following this, Ensign-Bickford, on June 18, 1965, filed with the Commission a petition to intervene in the Whitten application proceeding, and at the same time tendered for acceptance its petition for a reconsideration of the order of May

5. In radial service the carrier is limited to shipments moving from or to a designated base point. Traditional words of limitation, such as "on the one hand and on the other" are used to indicate this type of an operation. In non-radial service, the carrier may operate within the described territory and without reference to any base point. See Cardinale Trucking Company v. United States, 232 F.Supp. 339, 346 (D.N.J.1964); King Van Lines, Inc. v. United States, 230 F.Supp. 551 (D. Kan.1963); Shipley Transfer, Inc., 57 M.C.C. 22, 24 (1950); Bell Transportation Co., Inc., 79 M.C.C. 721, 724 (1959).

6. A reply in opposition to the S. & S. petitions for intervention and reconsideration was filed by Whitten wherein, inter alia, it recited its full compliance with the Commission's General and Special Rules of Practice, and the flagrant disregard of said Rules by S. & S.; that S. & S. had adequate notice of the filing of the Whitten application, and of the scope, extent and use to be made of the authority, if granted, including the non-radial nature of the intended operation; that S. & S. was chargeable with knowledge of the obligations and rights of a common carrier to tack, interchange and utilize fully authority granted by the Commission; that Whitten had every reason to believe that with the issuance of the Commission's order of May 20, the record was closed; that it had complied with all of the conditions of said order; that no good cause was shown by S. & S. why it should be permitted to intervene long after the effective date of the May 20 order; and that to permit intervention under the circumstances would lead to a complete disruption of orderly procedure, and a contempt for the Commission's Rules of Practice.

20. In addition to an alleged "change in circumstances", Ensign-Bickford also stated that it did not "now see a need for the type of service proposed and that the authority if issued will not be used by this Company to meet its motor carrier transportation needs." A similar application for leave to intervene and for reconsideration of the May 20 order, and in opposition thereto, was filed with the Commission on June 25, 1965, by a Whitten competitor, the Tri-State Motor Transit Co. (Tri-State) also a common carrier by motor vehicle, with authority to transport explosives and related commodities. However, on July 19, 1965, Ensign-Bickford, and on July 26, 1965, Tri-State, requested the Commission to be permitted to withdraw their respective pleadings filed in opposition to the Whitten application.

By order dated October 18, 1965, effective date October 19, 1965, the Commission, Division 1, acting as an Appellate Division, permitted Ensign-Bickford and Tri-State to withdraw their respective pleadings. By this same order of October 19, the Commission denied the S. & S. petition for leave to intervene, and rejected the petition tendered by S. & S. for reconsideration of the May 20 order "for the reason that no sufficient or proper cause appears for permitting petitioner [S. & S.] to intervene in this proceeding or for giving further consideration to its tendered petition for reconsideration or oral hearing."

On November 17, 1965, S. & S. made another attempt to intervene in the proceedings. This time S. & S. alleged that the authority granted to Whitten by the order of May 20, duplicated operations S. & S. had conducted for many years. It referred to the Ensign-Bickford pleadings to withdraw its support of the Whitten application (now no longer a part of the record before the Commission) and particularly the statement therein made that there was no need for the service authorized by the May 20 order. Again, S. & S. stated that it had refrained from protesting the Whitten application "out of an honest desire to avoid burdening the Commission or appearing to be quarrelsome * * *." In this second attempt S. & S. asked for either a cancellation of the order of May 20, or a modification thereof to indicate a radial rather than a non-radial operation.[7]

The record, as now constituted, was again considered by the Commission. By order dated January 14, 1966, service date January 17, 1966, the Commission, Division 1, acting as an Appellate Division, once more denied the S. & S. petition for intervention, and rejected the tendered petition for reconsideration of the May 20 order or for oral hearing, for the reasons:

"(A) that petitioner [S. & S.] has failed to present any sufficient or proper reason for its failure to file a timely protest to the application [of Whitten] as required by Rule 1.247 (d) [8] of the Commission's Special Rules of Practice; and (B) that no sufficient or proper cause now appears for permitting petitioner to intervene

---

7. Whitten also filed a reply in opposition to this second attempt at intervention by S. & S. Again Whitten called attention to the failure of S. & S. to file a timely protest, and its utter disregard for the Commission's Rules of Practice. In its second set of pleadings, S. & S. claimed it would suffer irreparable injury if the grant of authority to Whitten was permitted to stand. In support of this claim, S. & S. listed 44 shipments of explosives made by it from and to different points of origin and destination during April, May and June, 1965, and alleged that the new grant of authority to Whitten would enable Whitten to duplicate this operation. In its reply Whitten denied that there was any factual basis for the claim of irreparable damage, and pointed out that of the 44 shipments mentioned, 18 were not involved in the Whitten application, that 7 were permissible movements under Whitten's existing authority, and that 4 were intrastate in character.

8. The cited Rule is the one fixing the 30 day period for the filing of a protest, and providing that failure to do so will be construed as a waiver of opposition and participation in the proceeding. See footnote 2 of this opinion for other provisions of said Rule 1.247 applicable in this case.

in this proceeding or for giving further consideration to its tendered petition for reconsideration or oral hearing."

Upon compliance by Whitten with the requirements of said order of January 14, 1966, a certificate of public convenience and necessity was issued to Whitten on January 21, 1966, granting it authority as a common carrier by motor vehicle to transport in interstate commerce over irregular routes Classes A, B, and C explosives, and blasting agents, blasting materials, and blasting supplies, between Simsbury, Connecticut, and points in Massachusetts, New York, New Jersey, Pennsylvania and Vermont. The action in this Court then followed.

 At the outset, S. & S. recognizes the heavy burden that is cast upon a plaintiff who challenges the validity of an administrative order. As has been stated time and again, a presumptive validity attaches to such orders. Gardner v. United States, 67 F.Supp. 230 (D.N.J.1946); Accelerated Transport— Pony Express, Inc. v. United States, 227 F.Supp. 815 (D.Vt.1964). If there is a rational basis for the conclusions reached by the administrative body, the judicial function is exhausted. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260 (1934); Interstate Commerce Commission v. Inland Waterways Corp., 319 U.S. 671, 63 S.Ct. 1296, 87 L.Ed. 1655 (1943). Administrative orders, based on adequate findings, and supported by substantial evidence, cannot be upset. Chicago, B. & Q. R. Co. v. United States, 60 F.Supp. 580 (E.D.Ky.1945); Sloan's Moving & Storage Co. v. United States, 208 F.Supp. 567 (E.D.Mo.1962). A court cannot substitute its judgment for that of the Commission, but can only ascertain whether there is warrant in the

law and facts for the order under review. Shein v. United States, 102 F.Supp. 320 (D.N.J.1951). Of course, a court may not give a rubber-stamp approval to findings that are arbitrary or adopt findings not supported by substantial evidence. State of Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291 (1931); United States v. Baltimore & O. R. Co., 293 U.S. 454, 55 S.Ct. 268, 79 L.Ed. 587 (1935); Schaffer Transportation Co. v. United States, 355 U.S. 83, 78 S.Ct. 178, 2 L.Ed.2d 117 (1957). In passing upon the sufficiency of administrative orders, the record in its entirety must be considered. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Both the Commission and Whitten take the position that the sole issue involved in this case is whether or not the Commission abused its discretion in denying the untimely attempt made by S. & S. to intervene in the Whitten application proceeding. S. & S. answers this by admitting, as it must, that no S. & S. protest was timely filed. It goes further, and admits the sufficiency of the notice of the Whitten application as published in the Federal Register. S. & S. is also willing to concede that the Commission was not guilty of an abuse of discretion, and that it acted properly in rejecting the S. & S. pleadings. And, finally, S. & S. abandons in this Court, as being without merit, the grounds it urged before the Commission in support of its intervention applications, pertaining to radial operations, and the tacking of Whitten's new authority with that already possessed by it.[9]

 Notwithstanding the foregoing admissions and concessions, and the factual situation disclosed by the record, S. & S. nevertheless contends that it has

9. In view of the admissions and concessions made by S. & S. we deem it unnecessary to dwell upon the many cases dealing with the scope and extent of the discretionary powers vested in the Commission in connection with the discharge of its manifold duties under the Interstate Commerce Act. That "the

Commission possesses a 'wide range of discretionary authority' in determining whether the public interest warrants certification of any particular proposed service", cannot be doubted. Schaffer Transportation Co. v. United States, 355 U.S. 83, 78 S.Ct. 178, 2 L.Ed.2d 117 (1957).

standing in this Court, as an "aggrieved party" or "party in interest", to challenge the validity of the Commission's basic order of May 20, 1965, and those that followed on October 19, 1965 and January 14, 1966. There is no merit to this contention. The plain fact is that S. & S. was not denied "standing" to participate in the Whitten application proceedings. The Commission had no reason or occasion to rule on whether S. & S. was an "aggrieved party" or "party in interest" in those proceedings. S. & S. was not permitted to intervene because it was late in filing its protest and failed to give the Commission any satisfactory reason to excuse the late filing. Intervention was also denied because S. & S. advanced no sufficient grounds to warrant reconsideration of the Commission's order of May 20. The cases cited by S. & S. in support of its position are not at all applicable to the factual situation we have before us. We shall, nevertheless, notice the cases upon which principal reliance seems to be placed.

F. H. Peavey & Co. v. Union Pac. R. Co., 176 F. 409 (Cir.Ct.W.D.Mo.1910), is cited for the proposition that failure to participate in a proceeding before the Commission does not preclude parties injuriously affected by orders of the Commission from seeking judicial aid. In that case, hearings before the Commission resulted in an order adverse to Peavey, who thereupon filed a bill in the Circuit Court to restrain its enforcement. While this suit was pending, one Diffenbaugh, also affected by the Commission's order, likewise filed a bill in the same court to have enforcement of said order restrained. The Commission demurred to the Diffenbaugh bill on the ground that Diffenbaugh was not a party to the Commission proceedings upon which the challenged order was based. The demurrer was overruled. The facts of the case are complicated, involving competing grain markets, and contractual relationships among competing railroads and competing grain elevator operators. The Court pointed out that the real controversy before it

was between these competing interests. There was also some question about the sufficiency of notices regarding the hearings before the Commission. In passing, it should be noted that when the case was appealed to the United States Supreme Court, Interstate Com. Comm. v. Diffenbaugh, 222 U.S. 42, 32 S.Ct. 22, 56 L.Ed. 83 (1911), Mr. Justice Holmes observed that jurisdiction in the Diffenbaugh case was doubted, but that the Commission did not press the point because it wished a final decision.

We fail to see how the S. &. S. situation even remotely approaches that which confronted the Court in the Diffenbaugh case. In the case at bar, S. & S. had full notice and knowledge of the nature, extent and scope of the Whitten application. It attempted intervention, but failed to give the Commission any good reason why it did not act timely in the matter. It also failed to satisfy the Commission that the grounds urged for reconsideration of the May 20 order had any merit.

In Chicago Junction Case, 264 U.S. 258, 44 S.Ct. 317, 68 L.Ed. 667 (1924), the New York Central applied to the Commission for authority to acquire control of certain terminal railroads. The Baltimore & Ohio and other railroads intervened in the Commission proceeding and opposed the application. The Commission made an order in favor of the New York Central. B. & O. and the others affected by the order brought suit to have it set aside and for other relief. The district court, without opinion, dismissed the action. An appeal to the United States Supreme Court followed. There it was contended, inter alia, that B. & O. and its co-plaintiffs did not have the legal interest necessary to entitle them to challenge the order. The Supreme Court disagreed with this contention and reversed. On this issue the Court stated that the parties had a right to challenge the order because they were parties to it, and that the granting of intervention by the Commission implied a finding by that agency that the inter-

venors had an interest in the matter. The Court also found that the diversion of traffic resulting from New York Central's control of the terminal railroads had already subjected B. & O. and parties associated with it, to irreparable injury to the tune of more than $10,000,000.00, and that continued control by New York Central would subject them to an annual loss in net earnings of approximately that amount.

Again, the dissimilarity between this case and the one before us for review, with respect to the issues involved, should be obvious. The cited case merely accorded to parties who had intervened in the Commission proceedings and participated therein, standing in court to challenge the order to which they were parties, and which adversely affected them.

Western Pacific California R. Co. v. Southern Pacific Co., 284 U.S. 47, 52 S.Ct. 56, 76 L.Ed. 160 (1931) dealt with the question of a "party in interest" within the meaning of the Tranportation Act of 1920. Western was organized as a railroad company to construct and operate a railroad between two points in California, the lines of which had been definitely laid out and located. Western applied to the Commission for authority to construct the proposed road. Southern, an established railroad company operating in the vicinity of the line projected by Western, appeared before the Commission in opposition to Western's application. While the matter was still pending before the Commission, and prior to any decision by that agency, Southern, without Commission authority, began to lay tracks that would ultimately extend from its main line and cut across Western's projected line and beyond. Western filed a bill in the district court alleging that Southern's purpose was to impede and prevent Western's proposed construction and operation, and also to secure traffic from a district adjacent to Western's proposed line, the industrial development of which was anticipated. Injunctive relief was sought. In defense to the suit, Southern contended Western could not maintain the action because it was not a "party in interest" within the meaning of the Transportation Act, and, moreover, Southern's construction would not become an extension of its main line, but merely an industrial, or spur, track. The district court rejected both grounds of defense and directed that an injunction issue. On appeal, the Court of Appeals reversed on the ground that Western was not a party in interest. No opinion was expressed with respect to the "spur track" defense. The Supreme Court reversed the Court of Appeals, holding that Western was a party in interest, and that the proofs were enough to show that Southern's intended action might directly and seriously affect the project which Western was undertaking in good faith, in reliance "upon the procedure prescribed by the statute to secure an orderly hearing and proper determination of the matter."

All we need point out in connection with the cited case is that no Commission action was at all involved. Southern, under the pretext that it was merely constructing a "spur track" and not an extension of its main line, chose to act without Commission authority and was restrained from doing so.

Federal Communications Commission v. Sanders Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940), involved two applications before the Commission, one by a newspaper (Telegraph Herald) for a construction permit to erect a broadcasting station in Dubuque, Iowa, and the other by an existing station (WKBB) located in East Dubuque, for permission to move its transmitter and studios to Dubuque and install its station there. WKBB applied for leave to intervene in the Telegraph Herald proceeding, alleging that the granting of the newspaper's application would not be in the public interest. Intervention was allowed, both applications were consolidated for hearing, and the parties offered evidence in support of their respective applications. The Commission granted both applications. On appeal to the Court of Appeals, that tribunal held that

one of the issues that the Commission should have considered was that of alleged economic injury to Station WKBB by the establishment of an additional station in Dubuque, and that the Commission erred in failing to make findings on that issue. The Court decided that in the absence of such findings, the Commission's action in granting the newspaper's application was arbitrary and capricious. An appeal to the Supreme Court followed, and on the issue of standing, the Court concluded that while economic injury to an existing station was not a separate and independent element to be taken into consideration by the Commission in determining whether it should grant or withhold a license, it did not follow that because the licensee of a station could not resist the grant of a license to another, on the ground that the resulting competition may work economic injury to him, that he had no standing to appeal from an order of the Commission granting the application.

All that need be said about the cited case is that it recognized economic injury as a ground for according to a party adversely affected by an agency decision on that issue, standing to appeal therefrom. It is also to be noted that intervention was allowed by the Commission in the case, and that there was a full hearing of the consolidated applications on the merits.

In Philco Corporation v. Federal Communications Commission, 103 U.S.App. D.C. 278, 257 F.2d 656 (D.C.Cir. 1958), the Commission dismissed, without a hearing, a protest filed by Philco against the grant of an application for the renewal of NBC licenses for the operation of television and radio stations. The dismissal was based on the ground that Philco lacked standing as a "party in interest" within the meaning of section 309(c) of the Federal Communications Act. An appeal resulted in a reversal of the Commission's order, the Court holding that Philco did have standing before the Commission as a party in interest because it was a direct competitor of RCA, of which NBC was a

wholly owned subsidiary. The Court, in remanding the matter to the Commission, did not concern itself with the sufficiency of the Philco protest, but left the determination of that issue with the Commission.

This case does not help S. & S. In *Philco*, the protest was apparently timely filed. In S. & S. the filing was untimely. In *Philco*, the protest was dismissed without a hearing. In S. & S. the pleadings filed for intervention and reconsideration were considered by the Commission and were respectively denied and rejected for the reasons set forth in the Commission's order of January 14, 1966.

After the oral argument in this Court, counsel for S. & S. submitted for the Court's consideration, the case of Office of Communications of United Church of Christ v. F. C. C., 359 F.2d 994 (D.C. Cir. 1966). In that case a number of individuals and organizations, representing nearly one-half of the potential listening audience in the area served by Station WLBT, filed a petition with the Commission urging a denial of the WLBT application for a renewal of its license, and asking leave to intervene in their own behalf and as representatives of all other television viewers in Mississippi. The Commission dismissed the petition and, without a hearing, granted to WLBT a one-year (instead of the usual three-year) renewal of its license. The dismissal was based on the theory that members of the listening public, absent a potential direct, substantial injury or adverse effect from the administrative action under consideration, had no standing before the Commission. On appeal, the Commission's denial of intervention was reversed, the Court holding that in order to safeguard the public interest in broadcasting, some "audience participation" must be allowed in license renewal proceedings. The Court recognized that such participation might create problems for the Commission, but pointed out that the Commission need not allow the administrative process to be obstructed or overwhelmed by captions or obstructive protests, and that it could

avoid such results by appropriate regulations.

The cited case, for the first time, extended to members of the listening public, standing to participate in Commission proceedings. Prior thereto, the Commission limited standing to cases involving economic injury and electrical interference. It is significant to note that in the cited case, unlike S. & S., the petition urging a denial of the WLBT application and for leave to intervene was timely filed.

No one disputes the right and standing of S. & S. in this Court to challenge the action taken by the Commission in this case. But, we are being asked to do much more. S. & S. argues that the grant of authority to Whitten was in violation of law (the reference here being to 5 U.S.C.A. § 1009(e) and 49 U.S.C.A. § 307), in that there was no shipper support for the authority granted, no proof of a public need for the service, no legally sufficient findings of fact, no substantial evidence in the record as a whole to support any fact findings, and no rational basis for the conclusions reached by the Commission.

It is obvious that what we are being asked to do here is to evaluate the merits of the S. & S. claim, and also to pass upon the sufficiency of a new ground not urged before the Commission, namely, that the authority sought by Whitten, and supported by Ensign-Bickford was, in effect, contract, and not common, carriage.[10] And in the process of accommodating S. & S. in this regard we are also being asked to completely ignore and brush aside the Commission's General and Special Rules of Practice of many years standing relating to the handling of application proceedings under modified procedure, the reasonable time limitations fixed by the Rules for the filing of protests to such applications, and to condone and excuse the failure of S. & S., for reasons that are patently insufficient, to comply with said Rules. This we are unwilling to do.

S. & S. is a certificated carrier of many years experience. It is no stranger to the rules and regulations of the Commission. See Smith & Solomon Trucking Co. v. United States, 120 F.Supp. 277 (D.N.J. 1954). Under the circumstances of this case, S. & S. waited an unconscionably long period of time (March 25 to July 1) before attempting to intervene in the Whitten application proceedings. And when it did make the move, S. & S. sought to excuse and justify its failure to file a timely protest by alleging grounds (radial as against non-radial authority and tacking) that were subsequently abandoned at the oral argument in this Court as being without merit. The remaining reason assigned by S. & S. for not filing a timely protest was, as already noted, a desire on the part of S. &. S. to "avoid burdening the Commission", and not wanting to appear "quarrelsome". While this latter reason for failure to act timely may be altruistic, it can hardly qualify as a legally sufficient reason to excuse inaction.

It should be noted that prior to the making of the order of May 20, there had been a full compliance by Whitten with the provisions of the Commission's order of May 6, 1965. This is the order that directed the handling of the Whitten application under modified procedure, and the filing of verified statements in

---

10. It should be noted that notice of the Whitten application published in the Federal Register on March 25, 1965, expressly stated, in words that were italicized, that the authority sought by Whitten was to operate as a common carrier. The argument made by S. & S. is that there was no evidentiary basis for the grant of common carrier authority, and that the Commission could not arbitrarily reject the evidence that common carriage was not involved. Even assuming there is any basis for this assertion in the record, the fact remains it was not urged before the Commission, and hence is not properly before this Court for consideration. See United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952); United States v. Capital Transit Co., 338 U.S. 286, 70 S.Ct. 115, 94 L.Ed. 93 (1949); Kenny v. United States, 103 F.Supp. 971 (D.N.J.1952).

**254**

support of the application on or before a fixed date. As of May 20, 1965, no protests to the grant of common carrier authority as requested by Whitten had been filed with the Commission by S. & S. or any other interested party. The time to do so had long since expired. We have already noted the substance of the sworn statements submitted in support of the Whitten application. On the basis of the record, as then constituted, the Commission, by Operating Rights Board No. 1, found that the evidence before it amply warranted the grant of authority requested, and proceeded to make the findings that are set forth in its order of May 20.

There is no basis in fact for the further claim made by S. & S. that the Commission arbitrarily refused to consider the reasons advanced by Tri-State in opposition to the Whitten application, and the allegations made by Ensign-Bickford that due to changed conditions there was no longer any need for Whitten's services. There was no refusal, arbitrary or otherwise, on the part of the Commission to consider the allegations of the pleadings filed by Tri-State and Ensign-Bickford. These pleadings were withdrawn shortly after they had been filed. They simply never became a part of the record considered by the Commission in this case. The Commission's order of October 19, 1965, granted the withdrawals requested by Tri-State and Ensign-Bickford in July, 1965.

As already pointed out, the record considered by the Commission, and which formed the basis for the grant of authority to Whitten, consisted in the main of the sworn statements of Whitten and Ensign-Bickford, and this is the record that remained in the case. And we might add that our own independent examination of that record satisfies us that there was substantial evidence to support the findings made by the order of May 20.

It will be recalled that by its final order of January 14, 1966, the Commission denied S. & S. relief not only because no satisfactory reason was given for its failure to file a timely protest, but also because no good cause was shown to justify a reconsideration of the May 20 order. In the final analysis, it is this disposition of the case made by the Commission that we are called upon to review, and we have no hesitancy, apart from any concessions and admissions made by S. & S., in finding that the Commission, in light of the record before it, and for the reasons set forth in its order of January 14, 1966, was more than justified in denying the S. & S. petition for intervention and in rejecting the tendered petition for reconsideration.

Upon a review of the entire record in this case we are satisfied that the action of the Commission must be affirmed and the S. & S. complaint dismissed. Since our findings of fact and conclusions of law fully appear in this opinion, there is no need for repeating them by filing separate findings of fact and conclusions of law.

Counsel for the Commission will please submit an appropriate order.