GEORGIA–FLORIDA–ALABAMA TRANSPORTATION COMPANY, Inc., Plaintiff,

P. C. White Truck Line, Inc., a corporation, and St. Andrews Bay Transportation Company, Inc., a corporation, Intervening Plaintiffs,

v.

UNITED STATES of America and the Interstate Commerce Commission, Defendants,

M. R. & R. Trucking Company, Intervenor.

Civ. A. No. 931–S.

United States District Court
M. D. Alabama, N. D.
Sept. 11, 1968.

Maurice F. Bishop, John P. Carlton, Birmingham, Ala., Warner Wilson, Jr., of Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for St. Andrews Bay Transportation Co.

Robert Ginnane and Manny H. Smith, Gen. Counsel, I. C .C., John H. D. Wigger, Anti-trust Div., Dept. of Justice, Washington, D. C., Ben Hardeman, U. S. Atty., Champ Lyons, Jr., of Capell, Howard, Knabe & Cobbs, Montgomery, Ala., Dan R. Schwartz, of Schwartz, Proctor & Bolingor, Jacksonville, Fla., for the United States.

## MEMORANDUM OPINION AND ORDER

Before RIVES, Circuit Judge, and JOHNSON and PITTMAN, District Judges.

PER CURIAM:

Plaintiff GFA filed this action for a judicial review of the final order of the I.C.C. in M. R. & R. Trucking Company, Extension—Mobile, I.C.C. Docket No. MC–105881 (Sub-No. 35). The motions of St. Andrews Bay Transportation Company, Inc. and T. C. White Truck Line, Inc., to intervene as party plaintiffs were granted. The motion of M. R. & R. Trucking Company to intervene as party defendant was granted.

Plaintiffs seek to enjoin, annul, suspend and set aside I.C.C.'s final order. The jurisdiction of the court, its authority to review the decision of the I.C.C., and the administrative finality are admitted by the defendants.

The I.C.C. granted authority to the defendant M. R. & R. which M. R. & R. did not seek in its application, specifically, authority permitting it to interline through shipments at Mobile, Atlanta, Pensacola, Panama Ciy, and Jacksonville. In addition, the restriction in the final order "against the transportation of any traffic *moving solely* (Emphasis added.)

between Mobile, Alabama, on the one hand, and, on the other, Pensacola, Panama City and Jacksonville, Florida, and Atlanta, Georgia" permits or grants service authority to M. R. & R. between Mobile and points intermediate between Dothan and Panama City.

M. R. & R.'s original application as filed and of which notice appeared in the Federal Register, sought authority to transport general commodities with exceptions between Mobile, Alabama, and Pensacola, Florida, serving no intermediate points.

The plaintiffs protested. At the outset of the hearing M. R. & R. amended its application by stipulation with the protestants with these remarks:

"Mr. Examiner, at this point the *Applicant* will *offer an amendment* to the application in the nature of a restriction which we deem will reduce the scope of it and which incorporates some restrictions already existing and the restrictions we offer at this time are in these words: 'Authority sought to be *restricted against traffic moving in direct or interline service* (1) Mobile and Pensacola; (2) Mobile and Jacksonville and (3) Mobile and Atlanta.'

"If I may, by way of explanation say this: the original restriction that we had proposed with respect to between Mobile and Pensacola and Mobile and Jacksonville as appeared in the notice was intended by us to cover all traffic whether it was direct or interline. In other words, Applicant *didn't propose any service between* these two points, that is, between *Mobile and Pensacola* and *Mobile and Jacksonville.* Now, what we have done, we have *added another* one *between Mobile* and *Atlanta,* another restriction and made it clear that the service proposed will *not incompass any service* on the shipments *directly between* the two points *or interline at the two points.*" (Emphasis added.)

This was accepted by the Hearing Examiner. Three protestants, not parties to this suit, withdrew announcing the amendment "in substance deletes our interest between Atlanta and Mobile." All protestants, including plaintiffs, relied on the amended application and stipulation and made no further objections nor offered any evidence in opposition.

The Hearing Examiner honored the stipulation and his finding and report included the agreed restrictions.

The I.C.C. subsequently, and without giving notice to the protestants, to the public, or any further notice in the Federal Register, removed the stipulated restrictions which had been accepted and honored by the Hearing Examiner.

The plaintiffs contend that the grant of authority by the I.C.C. in excess of that sought contrary to the stipulation and amendment under these circumstances is error.

The defendants contend the I.C.C. may grant authority to a motor carrier broader than that requested by the carrier without notice to protestants or the public or without republication in the Federal Register.

The authority granted to M. R. & R. runs from Mobile to Pensacola, Florida, a M. R. & R. terminal under other previous grants of authority issued to M. R. & R. From Pensacola east its authority under previous grants runs through the panhandle of Florida to its east coast terminal Jacksonville, Florida, and through parts of Alabama and Georgia to another of its terminals, Atlanta, Georgia. In the case at bar, the authority granted from Mobile to Pensacola permits tacking at Pensacola with M. R. & R.'s previous extensive grants and could adversely affect numerous other carriers. Eight motor carriers protested.

### PLAINTIFFS' ASSIGNMENT OF ERROR NO. 1

"1. In granting authority without any notice or publication which was specifically excluded by stipulation and amendment of the application and on the basis of which stipulation and amendment accepted by the Hearing Examiner interested and affected motor carriers withdrew from the proceeding."

Because of the tacking at Pensacola the applicant has not only received a new grant of authority to a new terminal, Mobile, from an old one, Pensacola, serving a new area 60–70 miles in length which affects only one protestant, but in effect has received a second grant of authority due to the tacking at Pensacola which extends its authority eastward several hundred miles to the Atlantic Ocean at Jacksonville, Florida, and in a northeasterly direction through the panhandle of Florida, Alabama, and Georgia to Atlanta approximately 400 miles away.

The I.C.C. has differentiated between a grant of authority between two terminals without tacking and the grant of authority between terminals which tack and has indicated such tacking constitutes a grant in and of itself as different and separate, a grant distinct from a grant where tacking does not occur. *"Our failure to impose a restriction to prevent tacking* (Emphasis added.) with the other authority previously held by applicant would have *exactly the same effect as a grant* (Emphasis added.), therefore, we will impose a restriction against tacking."* Tompkins Motor Lines, Inc.—Extension—Louisville, 95 M.C.C. 472, 481.

To state it another way, where tacking occurs on a new grant, two grants actually take place: (1) a grant of authority between the two terminals and (2) a grant of authority from a new terminal to all the other areas brought into being by the tacking to a terminal which the applicant already serves under a previous grant. A much graver situation comes into being where tacking occurs and no restrictions are made against interlining. In this case, by reason of the removal of the restrictions contained in the application, the gateways have been opened

both east to west, Atlanta and Jacksonville to Mobile, and west to east, Mobile to Atlanta and Jacksonville, involving numerous competing carriers. Thus, the additional grant by reason of tacking and the removal of the restriction constitutes a grant not contemplated by the application which could *adversely and materially affect* the operation of other authorized carriers. The I.C.C. has noted the seriousness of such circumstances:

"In appropriate circumstances restrictions against interline and tacking at origin and/or destination points have been imposed. These instances evolve when grants of authority are tied closer to the applicants existing operations and where tacking and interchange would result in additional competitive operations which are not contemplated and which *would adversely and materially affect* the operation of other authorized carriers. Riss and Co., Inc., Ext—Dakota County, Nebr., 102 M.C.C. 336, 343. On occasion, the service restriction may also be allowed for such *compelling reasons* as the agreement of the parties that protestants would be *materially and adversely affected* by their omission. No. MC–61755 (Sub–No. 20), Northern Haulers, Corporation Extension— St. Lawrence County, N.Y." (Emphasis added.) Fox-Smythe Transportation Co., Ext—Oklahoma, 106 M.C.C. 1, 18.

█ The stipulated restrictions, recognized and honored by the Hearing Examiner, and the withdrawal or inaction thereafter by the protestants *implies a recognition* by all that the proceeding without the *restriction could materially and adversely affect* the protestants. Notice to interested persons and their right to be heard are basic concepts of justice under law. It would be manifestly unfair and unjust to these plaintiffs and other interested parties for this court to permit them to be lulled into a false sense of security, protection, and inaction by allowing the Commission to remove the restrictions in the amended application without the interested parties and the public having been given notice by publication in the Federal Register so they could be heard.

In brief and oral argument the defendants have relied heavily upon several cases wherein the I.C.C. has broadened the grant of authority beyond that sought in the application. The question of notice coupled with the tacking of the new authority to an old terminal was not raised or discussed in these cases. The broadened authority was limited and narrow in scope, to wit, (1) the restrictions of service " * * * 'from site of warehouses', 'to retail', 'to purchasers at retail' " was broadened by removing the restrictions. The I.C.C. stated the restrictions "are objectionable. It has not been our practice * * * to limit authority * * * to service any part of a municipality from any particular plants, warehouses or places of business * * *." J. E. Bejin Cartage Co., Contract Carrier Application 58 M.C.C. 255, and, (2) the description in the amended application "requiring movement in refrigerated equipment under refrigeration" was changed to "in vehicles equipped with mechanical refrigeration", a form or term long used by the I.C.C., and "oleo oils" was changed to "vegetable oils." The Rathbun Cartage Co., Ext.— Meats, Etc., 64 M.C.C. 559, and, (3) the amended application restricted "the movement of gaseous fertilizer to loads not exceeding 1000 gallons to be applied on farms by the particular applicant." was removed by the final order. The I.C.C. held "Both facets of the amendment are objectionable * * * the proposed restriction of 1000 gallons or less per load is not calculated to serve the farmers needs and could result in uneconomical practices * * * nowhere indicated * * * such a load restriction * * * is feasible * * * the policing problems incident * * * render the restriction completely undesirable." Darwin Clark Common Carrier Application, 78 M.C.C. 122, and, (4)

the similar cases collected and set out in Fox-Smythe Transportation Company, Ext.—Oklahoma, 106 M.C.C. 1.

Without approving, but noting these cases, we should not extend the practice of broadening a grant of authority over that sought beyond these limited instances to a case with the extensive ramifications of the case at bar.

■■ In a case of limited application, Chicago, St. Paul, Minneapolis and Omaha Railway Company et al. v. United States of America et al., 322 U.S. 1, 64 S.Ct. 842, 88 L.Ed. 1093 (1943), the Supreme Court of the United States has stated "The question of law in the case is whether the Commission on its finding need for such service had power to authorize service of intermediate points not asked for by the applicant." Therein the applicant did not seek authority to serve intermediate points between points named in its application. The Court decided the Commission had the power to grant broader authority than that requested. However, the case is doubtful authority on the question of notice. "It is said that these actions withdrew the intermediate points from issue and threw the protesting parties off their guard and that they did not have opportunity for adequate hearing on the matters ultimately decided. However, after receiving the report of Division 5 recommending granting, as was done, the railroads filed a petition for reconsideration. It is not in evidence. Whether surprise was claimed and evidence was indicated that could be added on rehearing, we do not know. The Court endeavors to protect the right of parties to fair hearings, but it will *not presume that their rights have been substantially denied when they do not embrace the opportunity to prove their grievance in the court below.*" (Emphasis added.) In the case at bar the parties embraced "the opportunity to prove their grievance" before the Commission and in this court.

On the other hand, the I.C.C. has recognized the wisdom of requiring republication in the Federal Register where a grant of authority has been made removing a restriction requested or agreed upon by issuing an order withholding the certificate for a period of time, usually 30 days from the date of an ordered republication, during which period of time a party or interested person may file a protest in petition for further hearing. North Creek Trucking, Inc. Common Carrier Application, 72 M.C.C. 497; Henry Edwards, Ext.—Jackson, Tennessee, 88 M.C.C. 566; Chem-Haulers, Inc., Ext.—Liquid Chlorine, 88 M.C.C. 1; Durwood L. Bell, Ext.—Arizona, 84 M.C.C. 360. These cases are distinguishable from the case under consideration in that the certificates had not been issued and could be withheld, whereas in the present case the certificate has been issued and the procedure followed there cannot be followed. However, these cases clearly show the I.C.C.'s concern and steps taken to prevent a prejudice which may arise due to improper or lack of publication in the Federal Register.

## PLAINTIFFS' ASSIGNMENT OF ERROR NO. 4

"In failing to apply the same standard to all points served jointly by GFA-Bay Line and specifically in granting authority to serve Mobile, Tyndall Air Force Base, Malone, Chipley, Cottondale, Graceville, Campbellton, and Greenwood, which are receiving service equal to, or better than the satisfactory joint line service between Mobile and Panama City."

The Commission made a finding which formed the basis of its restriction against moving "solely between Mobile, Alabama, on the one hand and, on the other, * * * Panama City." The Commission failed to restrict the certificate similarly to other Bay service points set out above in the Assignment of Error No. 4.

The plaintiff contends the Examiner and Commissioner specifically found that GFA-Bay Line were rendering an efficient and timely joint line service but erroneously granted a certificate between the multiple GFA-Bay Line points, supra. The most distant points involved covered by the joint line service of GFA-Bay Line are Mobile and Panama City. Traffic is interlined between these carriers at Dothan and as noted by the carrier and the Commission, GFA-Bay Line consistently are providing an overnight service to traffic moving between Mobile and Panama City and appropriately denied the application as to Mobile and Panama City, but the record shows, and we agree, the same efficient joint line service of GFA-Bay Line is available between Mobile and other Bay Line points intermediate between Dothan and Panama City.

There was no finding in this record of any material inadequacy of service available between Mobile and the above named Florida points. The applicable rule as stated in Kingsway Transports, Extension—Niagara Falls, 84 M.C. C. 45, as follows:

" * * * applicant has failed to establish that a need exists for the proposed service * * *. There must be an affirmative showing of a need for service based upon evidence of a consistent or recurring inability to secure adequate and satisfactory service from existing carriers."

Cf. Oklahoma-Louisiana Motor Freight Company, Extension—Ennis, Texas, 77 M.C.C. 77.

We think plaintiffs' Assignments of Error No. 1 and No. 4 are well taken. The Commission should order a republication in the Federal Register of the I.C.C. order and certificate as granted with an opportunity being given the plaintiffs, other carriers, and the public to offer evidence and be heard. The Commission will then re-examine the evidence and arguments and determine whether or not its certificate and order should stand or be set aside.