**BYERS TRANSPORTATION COMPANY, Inc., Plaintiff,**

**v.**

**UNITED STATES of America, Interstate Commerce Commission, Churchill Truck Lines, Inc., Brady Motorfrate, Inc., Bruce Motor Freight, Inc., Defendants.**

**No. 17790–4.**

United States District Court, W. D. Missouri, W. D.

March 31, 1970.

Lowell L. Knipmeyer, Knipmeyer, McCann & Millett, Kansas City, Mo., Rice, Carpenter & Carraway, Washington, D. C., for plaintiff.

Frank W. Taylor, Jr., Kansas City, Mo., for intervenors.

Nahum Litt, I.C.C., Washington, D. C., Calvin K. Hamilton, 1st Asst. U. S. Dist. Atty., Kansas City, Mo., for defendants.

Before GIBSON, Circuit Judge, HUNTER and OLIVER, District Judges.

## FINDINGS, OPINION AND ORDER

ELMO B. HUNTER, District Judge.

This is an action filed in the Western District of Missouri to suspend, enjoin and set aside a report and order of the Interstate Commerce Commission dated June 23, 1969, and issued in Commission proceeding MC–C–5773.[1] The undersigned three-judge court was designated to hear the case.

By a complaint filed with the Commission on September 20, 1967, Crouch Bros., Inc., alleged that Byers Transportation Company, Inc., was violating the terms of a certificate authorizing certain regular common carrier operations between described midwest points subject to a restriction therein.

---

1. Crouch Bros., Inc. v. Byers Transportation Company, Inc., 110 M.C.C. 127. Defendants Churchill, Brady and Bruce upon their application were permitted to intervene in this action.

## Background of Dispute

Byers is a common carrier of property by motor vehicle in interstate and foreign commerce authorized to transport general commodities, with certain exceptions, over regular routes, (1) between Kansas City, Missouri, and St. Joseph, Missouri on one hand, and (2) between East St. Louis, Illinois and St. Joseph, Missouri, serving named intermediate and off-route points.

Byers acquired by purchase authority permitting service between St. Joseph, Missouri and Omaha, Nebraska and Des Moines, Iowa thereby obtaining in April, 1962, Certificate No. MC–10472 (Sub. No. 20).[1] It is the restriction contained in that certificate that is the source of the present dispute.[2]

Approximately two weeks after the issuance of its purchased certificate, Byers sought and obtained an informal opinion from a Commission employee to the effect the certificate permitted Byers by tacking or joinder to provide a through service to or from points beyond St. Joseph, Missouri.[3] Shortly thereafter Byers commenced through service operations.

On September 20, 1967, a complaint was filed with the Commission by Crouch Bros., Inc., one of the protestants in the purchase proceedings, alleging that the overhead (through) service conducted by Byers exceeded the scope of the Byers Sub. 20 certificate.[4] The examiner in his recommended order found that the restriction in Sub. 20 applied only to the corporate limits of St. Joseph, Missouri, and that it did not preclude joiner at common points outside of the corporate limits of St. Joseph, Missouri but within the commercial zone thereof.[5] The examiner rejected Byers' contention that the formal complaint should be dismissed for laches. On August 30, 1968, Division 1 of the Commission affirmed the examiner's recommended order.[6]

Subsequent to several petitions filed by protestants, on December 31, 1968, Division 1 issued an order reopening the proceedings for further consideration on the existing record, and the entire Commission recalled the proceeding from Division 1. On June 30, 1969, the full Commission served its report and order which is the subject of this three-judge court review. The full Commission's report and order reversed the findings and conclusions of the examiner and Division 1, and found that the restrictions contained in the Byers Sub. 20 precluded Byers from transporting shipments between Omaha, Nebraska, Council Bluffs and Des Moines, Iowa on the one hand, and, on the other, points Byers is permitted to serve south of St. Joseph, Missouri, such as Kansas City and St. Louis, Missouri.[7] Byers then filed a petition for modification or stay of the effective date of the June 30, 1969, full Commission order pending final determination of the Byers' application for a Certificate of Public Convenience and Necessity granting regular and irregular route authority which negate the effect

1. See, In Byers Transportation Co.—Purchase—Ralston's Truck Line, Inc., 85 M.C.C. 633, 641 (1962).

2. Defendant Brady and numerous others were protestants in that proceeding.

3. The opinion-letter stated that the opinions expressed were *not* binding on the Commission.

4. Docket No. MC–F–7211.

5. "Joinder" (tacking) is a term of art whereby a carrier, unless otherwise restricted, may provide a through service by combining two separate authorities at a common point of service.

6. Docket No. MC–C–5773.

7. The full Commission's order was favorable to protestants, and was concurred in by all the Commissioners, including those of Division 1, with one nondivision 1 judge dissenting.

of the mentioned restriction.[8] That petition was denied on October 27, 1969, by order of the Commission.[9]

### Issues

Primarily at issue in this case is whether the Commission clearly erred in deeming the certificate containing the restriction to be ambiguous so as to permit it to look to the proceedings in which it was issued, to resolve the ambiguity. Plaintiff contends the restriction is not ambiguous; that it does not preclude the questioned tacking or joinder and that resort cannot be made to any other source to ascertain its meaning. Plaintiff also contends that the effect of the Commission's opinion and order is to unlawfully deprive it of granted authority in that it is a partial revocation of its certificate. Finally, plaintiff contends that defendants are barred by laches from proceeding in this case and that the Commission clearly erred in overlooking that contention in its opinion and order.

### Scope of Review

■ Our function on review is not to engage in a de novo construction of our own of the certificate. We are bound by the Commission's interpretation of its own certificate unless we are persuaded that it is clearly erroneous, or capricious and arbitrary so as to do violence to established principles of law. Andrew G. Nelson, Inc., v. United States, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958); Malone Freight Lines, Inc., v. United States (N.D.Ala.1952), 107 F.Supp. 946, aff'd. per curiam, 344 U.S. 925, 73 S.Ct. 497, 97 L.Ed. 712; Campbell Sixty-Six

Express, Inc., v. United States (W.D. Mo.1966), 258 F.Supp. 529.

### General Rules

■ Before discussing and ruling plaintiff's contentions it may be helpful to set out several general rules concerning common carriers by motor vehicle. It is a well-settled principle of regulatory law that regular-route motor common carriers may operate over all combinations of their separately described routes, and between all authorized points on such routes, unless their service is specially restricted in some particular. It is equally established that motor carrier authority to serve a particular municipality in the transportation of property, unless otherwise limited, includes implied authority to serve all points within the commercial zone of that authority, as defined by the Commission. See, Commercial Zones and Terminal Areas, 54 M.C.C. 21.

■■ In line with these established principles it is clear that plaintiff is authorized under both its original and purchased authorities to serve St. Joseph, Missouri, and points in its commercial zone.[10] It is also clear that as all points in the St. Joseph commercial zone are common to both of plaintiff's authorities, plaintiff's routes may be joined at any point within that commercial zone, absent a specific restriction to the contrary. Thus, the essential problem presented is whether such a contrary restriction is contained in Certificate MC–10472 (Sub. No. 20).

### Question of Ambiguity

In pressing its contention that the restriction is not ambiguous and does not

---

**8.** This related proceeding is still pending, and defendant Churchill is a party to it. See, MC–C–10472, Sub. 26.

**9.** Byers has been favored in the instant three-judge court action with a temporary restraining order restraining the Interstate Commerce Commission from enforcing its report and order of June 30, 1969, until a determination of the case is made by this Court.

**10.** A "commercial zone" is a term of art used to define an area surrounding a designated point in which area a carrier may provide service as impliedly contained within the authority to serve the designated point, unless otherwise limited. A grant of authority to serve St. Joseph, Missouri, impliedly grants authority to serve points within five miles of the city limits of St. Joseph, Missouri.

prohibit the disputed tacking, plaintiff emphasizes that part of Certificate No. MC–10472 (Sub. No. 20) which we have italicized: *"The authority granted herein is restricted so as to preclude joinder with existing regular and irregular rights of carrier at St. Joseph, Missouri,* for the purpose of performing a through service between Omaha, Nebraska, Council Bluffs or Des Moines, Iowa, on the one hand, and, on the other points beyond St. Joseph, Missouri."

■■ The cardinal rule in interpreting motor carrier authority is that the carrier's certificate must speak for itself, and that consideration may ordinarily be given to the circumstances surrounding the grant of such authority only if the authority itself is patently indefinite or ambiguous. Absent these, and absent clerical errors and other ministerial mistake, it is the established rule that operating rights ordinarily must be construed according to their terms regardless of what may have been intended at the time of their issuance. This is so even though the effect is to confer more or less authority than intended originally. See, American Trucking Assn's. v. Frisco Co., 358 U.S. 133, 79 S.Ct. 170, 3 L.Ed.2d 172 (1958); T. I. McCormick Trucking Co., Inc.,—Investigation, 110 M.C.C. 499 (1969); Great Northern v. Standard Transportation and Elmer's Exp., 110 M.C.C. 35 (1969).

■ Plaintiff argues the Commission's interpretation is clearly erroneous because it looks beyond the restrictive words themselves which plaintiff says are not ambiguous. The infirmity in plaintiff's position is that the Commission in determining whether or not ambiguity exists may look to the entire authorizing certificate and is not limited to any particular portion thereof. It is the entire certificate that speaks for itself. This is simply the general and established legal rule applicable to all documents, including certificates of authority.

■ The Commission found by looking to the entire certificate that there were at least two reasonable constructions that might be accorded the restriction. The first one occurs if the rule is applied that a restriction imposed *against* serving a municipality applies only to the point named and does not restrict against serving other points in the commercial zone at the named points. See, Philipp Transit Lines, Inc., Extension—Kansas City, 64 M.C.C. 542; Garrett Freight Lines, Inc., Extension—New Mexico Points, 86 M.C.C. 235; Schroder's Exp., Inc.—Investigation of Operations, 89 M.C.C. 143.[11] Under this construction and looking essentially to the restrictive language in that part of the certificate that plaintiff emphasizes, the words precluding joinder at St. Joseph could be taken as referring only to points within the corporate limits of that municipality and tacking would appear permissible at those points within the St. Joseph commercial zone which are beyond the city limits of that point. The second reasonable construction that can fairly be accorded the restriction, according to the Commission, is to consider all the pertinent portions of the certificate, and those portions reveal that the avowed purpose and intent of the restriction is to preclude the tacking of the combined authorities, including prohibiting tacking both with the City of St. Joseph and in the commercial zone. This second construction is clearly called for and is obviously sound. The stated purpose of the restriction to prevent a through service between Omaha, Council Bluffs and Des Moines, on one hand, and, on the other, points beyond St. Joseph is included in the certificate itself.

11. Somewhat as an additional ground for finding ambiguity the Commission noted there was uncertainty as to the scope of the restriction as expressed by the reports of its division. A careful reading of the three cases cited by the Commission persuades there was not an established, consistent interpretation of this kind of restrictive language.

Having declared the ambiguity, the Commission proceeded to consider the record underlying the issuance of the certificate. This underlying record shows the purpose of the restriction was to prevent the very kind of tacking at issue here, and the Commission so stated. It noted that in the purchase hearing (Byers Transportation Co., Inc.—Pur.—Ralston Truck Line, Inc., 85 M.C. C. 633) wherein Crouch, Darling and others were opposing the purchase of the certificate because they were opposed to any tacking that might permit the through service or handle "overhead" traffic at issue here, Byers had failed to demonstrate to the Commission there was a need for such service; hence, the restriction against it.

We find no clear error in the Commission's finding that the certificate and its restriction were ambiguous, and we also find no error in its interpretation of them as contained in its report and order dated June 23, 1969.

### Estoppel

■ There is no need in this case to decide whether an equitable doctrine of estoppel may ever be applied against the Interstate Commerce Commission in the performance of its statutory duties to regulate in the public interest common carriers of property by motor vehicles in interstate and foreign commerce. It is noteworthy that plaintiff is unable to cite any case in which the doctrine was applied, and we know of none. In any event the undisputed facts are such that plaintiff is without the requisite equities. Plaintiff relies principally on the fact that from 1960 to the date of this case it provided the disputed through service, perhaps encouraged by the non-binding informal opinion it obtained from a Commission employee. Against this there is the notice contained in the certificate and also contained in the record underlying its issuance that this was a prohibited tacking. Plaintiff knew that the numerous protestants in the purchase hearing were strongly op-posed to the purchase unless it prohibited the questioned tacking, and should have known that they were likely to protest if tacking were done and especially if it were done in sufficient amount to deprive them of business. For some years it has had the benefits of the through route to which it was not legally entitled, and cannot now successfully convince that the equities are on its side.

Nor do we find any merit in plaintiff's contention the Commission did not give *required* consideration to the estoppel contention. The record before us demonstrates that the Commission considered all the relevant facts, including the tacking operation plaintiff has been engaged in since 1960 and the mentioned informal, nonbinding opinion. The Commission also had before it in the briefs plaintiff's estoppel contention and what the Division's opinion had said concerning estoppel. It reversed the Division's opinion and, although not specifically mentioned, it is clear from the Commission's opinion before us that the Commission did not believe the estoppel contention to be of sufficient force to require specific discussion. The Commission's decision as contained in its opinion sufficiently complies with that portion of the Administrative Procedure Act requiring all decisions to include findings and conclusions, and the reasons or basis therefor, on all material issues of fact, law or discretion presented on the record. See, 5 U.S.C. Section 557, Subsection (c).

### Partial Revocation Contention

■ From what we have said above, it is evident that the assailed Commission's Report and Order do not effect a partial revocation of plaintiff's certificate. Confronted with an ambiguous certificate the Commission upon proper request simply interpreted the certificate and its restrictions under applicable standards of law. The Commission's report and order take nothing away from plaintiff that it legitimately and lawfully had. Cf. R. C. Motor Lines, Inc. v.

United States (M.D.Fla.1965), 241 F. Supp. 124; Southern Pacific Company v. United States (D.Nebr.1967), 277 F. Supp. 671, 681, aff'd per curiam, 390 U. S. 744, 88 S.Ct. 1442, 20 L.Ed.2d 275 (1968); Sims Motor Transit Lines, Inc. v. United States (N.D.Ill.1959), 183 F. Supp. 113, aff'd per curiam 362 U.S. 637, 80 S.Ct. 1076, 4 L.Ed.2d 1019. Hence, there is no partial revocation of plaintiff's certificate contrary to provisions of the Administrative Procedure Act as plaintiff contends, for there is no revocation whatsoever that has occurred.

### Conclusion

In conclusion, we affirm the report and order of the Commission, and we hereby dissolve the prior temporary restraining order entered herein by Judge Hunter on November 7, 1969.

It is so ordered.