**BUCKNER TRUCKING, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants, and United States Steel Corporation et al., Intervening Defendants.**

Civ. A. No. 71–H–531.

United States District Court, S. D. Texas, Houston Division.

Feb. 23, 1973.

Marvin Schulman, Prappas, Caldwell & Moncure, Houston, Tex., for plaintiff.

Anthony J. P. Farris, U. S. Atty., Houston, Tex., Walter B. Comegys, Acting Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for defendant United States of America.

Fritz R. Kahn, Gen. Counsel, Charles H. White, Jr., Atty., I.C.C., Washington, D. C., for defendant Interstate Commerce Comm.

Wayne L. Emery, Pittsburgh, Pa., Richard P. Keeton, Vinson, Elkins, Searls & Smith, Houston, Tex., for intervening defendant United States Steel Corp.

Austin L. Hatchell, Lanham, Hatchell & Sedberry, Austin, Tex., for intervening defendants Roy L. Jones, Inc. and Western Lines, Inc.

James W. Hightower, Hightower & Alexander, Dallas, Tex., for intervening defendants J. H. Rose Truck Lines, Inc., F. B. Walker, Inc., Wales Transp., Inc., Parkhill Truck Co. and H. J. Jeffries Truck Line, Inc.

Joe G. Fender, Fender & Crawford, Houston, Tex., for intervening defendants Hill & Hill Truck Line, Inc. and E. Jack Walton Trucking Co.

Phillip Robinson, Mert Starnes, Paul D. Angenend, Robinson, Felts, Starnes & Nations, Austin, Tex., for intervening defendants H. S. Anderson Trucking Co. and Tom Hicks Transfer Co.

Thomas E. James, Morgan Nesbitt, Dallas, Tex., for intervening defendant C & H Transportation Co.

Before INGRAHAM, Circuit Judge, NOEL and BUE, District Judges.

## MEMORANDUM OPINION

CARL O. BUE, Jr., District Judge:

In this action plaintiff Buckner Trucking, Inc. seeks to set aside and enjoin enforcement of certain orders of defendant Interstate Commerce Commission (Commission) which resulted in the grant of certificates of public convenience and necessity to twelve intervening defendants. Jurisdiction is invoked under 28 U.S.C. §§ 1336, 2321–2325 and 5 U.S.C. §§ 702–706. A three-judge court was convened pursuant to 28 U.S.C. § 2284.

### I.

## THE ADMINISTRATIVE PROCEEDINGS

The proceedings before the Commission which led to the issuance of the orders in issue can be briefly summarized. On October 29, 30, 31 and November 3, 1969, twelve applications were filed with the Commission seeking certificates of public convenience and necessity. These would authorize the applicants to operate motor vehicles in interstate commerce as common carriers of iron and steel articles from Baytown and East Baytown, Texas (points in the Houston, Texas Commercial Zone) to points in Arkansas, Kansas, Louisiana, Mississippi, New Mexico and Oklahoma. These applications were occasioned by the opening of a new United States Steel Corporation plant within the Houston Commercial Zone at East Baytown, Texas. Between November 27 and December 4, 1969, notices of the filing of the applications were published in the Federal Register.[1] Protests to the applica-

1. Typical of the notices published in the Federal Register is the following:

INTERSTATE COMMERCE COMMISSION
[Notice 1353]
MOTOR CARRIER, BROKER, WATER CARRIER AND FREIGHT FORWARDER APPLICATIONS
November 21, 1969.

The following applications are governed by Special Rule 247 [1] of the Commission's general rules of practice (49 CFR Part 1100.247, as amended), published in the Federal Register issue of April 20, 1966, effective May 20, 1966. These rules provide, among other things, that a protest to the granting of an application must be filed with the Commission within 30 days after date of notice of filing of the application is published in the Federal Register. Failure seasonably to file a protest will be construed as a waiver of

tions were duly filed by five motor carriers, and United States Steel Corporation then intervened in support of all the applications. The applications were subsequently consolidated and set for hearing before a hearing examiner on September 16, 1970. Notice of the hearing was sent to all parties of record in compliance with the Commission's rules of practice. Prior to the scheduled hearing the protests of the five motor carriers were withdrawn. On September 16, 1970, a hearing was held. On October 14, 1970, the hearing examiner filed a report and entered an order recommending that appropriate certificates

be issued. The time for filing exceptions to this report and recommended order was extended by the Commission to November 25, 1970.

It is at this point in the administrative proceedings that plaintiff makes its first appearance. On November 16, and November 18, 1970, plaintiff filed a petition for leave to intervene, for a further hearing and for leave to file exceptions to the report and recommended order. On December 7, 1970, the Commission denied plaintiff's various pleadings for the reason that "no sufficient or proper cause appears at this time, for permitting petitioner to participate as a

opposition and participation in the proceeding. A protest under these rules should comply with section 247(d)(3) of the rules of practice which requires that it set forth specifically the grounds upon which it is made, contain a detailed statement of protestant's interest in the proceeding (including a copy of the specific portions of its authority which protestant believes to be in conflict with that sought in the application, and describing in detail the method—whether by joinder, interline, or other means—by which protestant would use such authority to provide all or part of the service proposed), and shall specify with particularity the facts, matters, and things relied upon, but shall not include issues or allegations phrased generally. Protests not in reasonable compliance with the requirements of the rules may be rejected. The original and one copy of the protest shall be filed with the Commission, and a copy shall be served concurrently upon applicant's representative, or applicant if no representative is named. If the protest includes a request for oral hearing, such requests shall meet the requirements of section 247(d)(4) of the special rules, and shall include the certification required therein.

Section 247(f) of the Commission's rules of practice further provides that each applicant shall, if protests to its application have been filed, and within 60 days of the date of this publication, notify the Commission in writing (1) that it is ready to proceed and prosecute the application, or (2) that it wishes to withdraw the application, failure in which the application will be dismissed by the Commission.

Further processing steps (whether modified procedure, oral hearing, or other procedures) will be determined generally in

accordance with the Commission's General Policy Statement Concerning Motor Carrier Licensing Procedures, published in the Federal Register issue of May 3, 1966. This assignment will be by Commission order which will be served on each party of record.

The publications hereinafter set forth reflect the scope of the applications as filed by applicants, and may include descriptions, restrictions, or limitations which are not in a form acceptable to the Commission. Authority which ultimately may be granted as a result of the applications here noticed will not necessarily reflect the phraseology set forth in the application as filed, but also will eliminate any restrictions which are not acceptable to the Commission.

. . . .

No. MC 4964 (Sub-No. 37), filed October 29, 1969. Applicant: ROY L. JONES, INC., 915 McCarty Avenue, Post Office Box 24128, Houston, Tex. 77029. Applicant's representative: Austin L. Hatchell, 1102 Perry Brooks Building, Austin, Tex. 78701. Authority sought to operate as a *common carrier*, by motor vehicle, over irregular routes, transporting: *Iron and steel, and iron and steel articles*, from Baytown and East Baytown, Tex., to points in Arkansas, Louisiana, Oklahoma, Kansas, New Mexico, and Mississippi. Note: Applicant states that the requested authority cannot be tacked with its existing authority. If a hearing is deemed necessary, applicant requests it be held at Houston, Tex., or Washington, D.C.

1 Copies of Special Rule 247 (as amended) can be obtained by writing to the Secretary, Interstate Commerce Commission, Washington, D.C. 20423. 34 Fed.Reg. 18963 (1969).

party to the concerned cases or for giving further consideration to the tendered matter."[2] The Commission also indicated that since no exceptions to the recommended order had been timely filed by a party, this recommended order had become the Order of the Commission as of November 25, 1970, pursuant to Rule 97, 49 C.F.R. § 1100.97, of the Commission's General Rules of Practice. Plaintiff's subsequent motion for reconsideration of the Commission's order and motion to stay effective date of the order approving the applications was denied on March 11, 1971, by Division One of the Commission acting as an Appellate Division upon consideration of plaintiff's pleadings and the response thereto of the various parties.[3] Shortly thereafter on April 2, 1971, both the filing of plaintiff's petition seeking a finding that these proceedings involve an issue of general transportation importance and its motion to withhold issuance of the certificates were denied because it was determined that plaintiff was not a party to the proceedings pursuant to Rule 101, 49 C.F.R. § 1100.101, of the Commission's General Rules of Practice.

## II.

## THE CONTENTIONS OF THE PARTIES

Plaintiff has traversed virtually the entire spectrum of potential error in asserting its numerous allegations of misfeasance on the part of the Commission in conducting the administrative proceedings. Basically, plaintiff attacks the propriety of certain of the Commission's rules of practice—particularly Special Rule 247, 49 C.F.R. § 1100.247. These contentions can be summarized as follows: (1) The notice of the applications as published in the Federal Register was insufficient to apprise plaintiff that the ensuing order of the Commission would authorize the transportation of iron and steel articles from Houston, Texas; (2) The plaintiff had a statutory right to intervene in the administrative proceedings and to attempt to establish that the certificates should not be issued, since plaintiff's existing transportation service was adequate and the authorization embodied within the certificates should have been restricted to the transportation of iron and steel articles from the plant site; (3) The Com-

---

2. The Commission stated, in part, that:
 Upon consideration of the record in the above-entitled proceedings, and of:
 (1) Petition of Buckner Trucking, Inc., filed November 18, 1970, for leave to intervene in the above-entitled proceedings, embracing tendered exceptions to the report and recommended order of the hearing examiner, with tendered alternate request for further hearing;
 (2) Petition of Buckner Trucking, Inc., filed November 18, 1970, for indefinite stay of the said recommended order;
 (3) Joint reply (telegram) by E. Jack Walton Trucking Company, applicant, in No. MC–79999 (Sub-No. 8), and Hill & Hill Truck Lines, Inc., applicant in No. MC–107678 (Sub-No. 41), filed November 20, 1970;
 and good cause appearing therefor:
 *It is ordered*, That the petition for leave to intervene and the tendered pleadings and pleas be, and they are

hereby, denied and rejected, respectively, for the reason that no sufficient or proper cause appears at this time, for permitting petitioner to participate as a party to the concerned cases or for giving further consideration to the tendered matter.
 *It is further ordered*, That in view of the action taken in the preceding paragraph, the petition in (2) above, be, and it is hereby, denied.

3. The Commission stated, in part, that (1) "the order of November 25, 1970, was entered in accordance with the law after it appeared that petitioner had failed to show good cause to be allowed to participate as a party to the concerned cases or for giving further consideration to the tendered matter, and (2) . . . no sufficient cause appears at this time for vacating or reconsidering the order of November 25, 1970, or for giving further consideration to the matter."

mission abused its discretion by arbitrarily refusing to consider plaintiff's exceptions to the report and recommended order, the petition to reconsider and the petition for a finding of general transportation importance; and (4) The order of the Commission granting the certificates is not supported by substantial evidence, and the various orders of the Commission denying plaintiff's petitions lack sufficient findings and conclusions to comply with the Administrative Procedure Act.

On the other hand, the joint answer of the United States and Interstate Commerce Commission basically alleges that plaintiff lacks standing to attack the order of the Commission granting the certificates since it was not a party to the proceedings, its petition for leave to intervene having been properly denied as untimely and without sufficient cause, pursuant to the Commission's General Rules of Practice. Defendants further claim that there is substantial evidence to support the Commission's findings and that the Commission applied proper legal standards in denying plaintiff's petitions and granting the certificates. The answers of the intervening defendant motor carriers take essentially the same position.

### III.

## THE SCOPE OF JUDICIAL REVIEW

■ The scope of review of a three-judge court is governed by the Administrative Procedure Act, 5 U.S.C. § 706. Ace Lines, Inc. v. United States, 197 F.Supp. 591 (S.D.Iowa 1960) (three-judge court). The standard of judicial review under the Administrative Procedure Act requires that the order of the Commission be presumed to be valid. Bell Lines, Inc. v. United States, 306 F. Supp. 209 (S.D.W.Va.1969) (three-judge court), aff'd per curiam, 397 U.S. 818, 90 S.Ct. 1517, 25 L.Ed.2d 804 (1970). The function of the Court is necessarily limited to deciding if there is substantial evidence to support the Commission's findings and if the Commission

applied proper legal standards. Florida East Coast Railway Co. v. United States, 242 F.Supp. 490 (M.D.Fla.) (three-judge court), aff'd per curiam, 382 U.S. 161, 86 S.Ct. 316, 15 L.Ed.2d 228 (1965). As a result, the judicial function is exhausted when some rational basis is found to support the conclusion of the Commission. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286-287, 54 S.Ct. 692, 78 L.Ed. 1260 (1934). Review is limited to the record compiled before the Commission. National Trailer Convoy, Inc. v. United States, 240 F. Supp. 286 (N.D.Okl.1965) (three-judge court), aff'd per curiam, 382 U.S. 40, 86 S.Ct. 161, 15 L.Ed.2d 33 (1966).

### IV.

## THE INTERSTATE COMMERCE ACT AND THE COMMISSION'S GENERAL RULES OF PRACTICE

■ The Interstate Commerce Act, 49 U.S.C. §§ 301-327, provides for the regulation of motor carriers operating in interstate commerce. The central provisions of the regulatory scheme are sections 206 and 207, 49 U.S.C. §§ 306 and 307, which prohibit motor carriers from operating in interstate commerce unless they hold a certificate of public convenience and necessity. These provisions reflect that such a certificate is, in essence, a revocable license. Section 207 of the Act, 49 U.S.C. § 307 provides that:

> [A] certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied . . . .

The Commission is authorized to conduct its proceedings in issuing certificates in such manner as will best facilitate the proper dispatch of business and to make such rules and regulations concerning practice and procedure as it deems necessary so long as such rules and regulations are comparable to those used in the courts of the United States. 49 U. S.C. § 17(3). Pursuant to this authority and sections 12, 204(a)(6) and 205 of the Act, 49 U.S.C. §§ 12, 304(a)(6), 305, the Commission has promulgated its "General Rules of Practice." See Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940). However, notwithstanding the broad powers vested in the Commission over carriers engaged in interstate commerce and the wide range of administrative discretion vested in it, the Commission must operate within the bounds of Constitutional limits and legislative requirements. Atchison, Topeka & Santa Fe Ry. v. United States, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273 (1932); Federal Maritime Commission v. Anglo-Canadian Shipping Co., 335 F.2d 255 (9th Cir. 1964).

Faced with a burgeoning case load of applications from motor carriers the Commission through a policy statement, General Policy Statement Concerning Motor Carrier Licensing Procedures, Ex Parte No. 55, 31 Fed.Reg. 6600 (1966), established special guidelines for handling these applications. In accord with this policy statement, Special Rule 247 of the Commission's General Rules of Practice, 49 C.F.R. § 1100.247, was promulgated. This rule details the procedure that the Commission utilizes in processing motor carrier applications. The only notice of the filing of such applications to competitors and other interested persons is given by publication in the Federal Register. The summary of the application so published is prepared by the Commission. Protests to the granting of an application are required to be filed within thirty days of publication. The special rule provides that "[f]ailure seasonably to file a pro-test will be construed as a waiver of opposition and participation in the proceedings." Interested persons who desire notice of hearing or other proceedings in connection with an application are required to notify the Commission within the prescribed thirty day period. Hearings are generally limited to contested proceedings, and notice of the hearing is duly sent to the applicant, previously acknowledged protestants and interested parties. The special rule provides for intervention, but untimely petitions to intervene are granted only upon a sufficient showing of substantial cause.

## V.

## THE PROCEDURAL ISSUES

### A.

### THE COMMISSION'S GENERAL RULES OF PRACTICE— NOTICE

The applications of the twelve motor carriers were published in the Federal Register pursuant to Special Rule 247, 49 C.F.R. § 1100.247. This publication also included a basic statement of the Commission's general practice and procedure embodied within this special rule. Plaintiff contends that the applications as published were inadequate. It is specifically asserted that the published notice indicated only that authorization was sought to transport iron and steel from Baytown and East Baytown. Plaintiff argues that since the regulations, 49 C.F.R. §§ 1048.34, 1048.101, define the City of Baytown as being within the Houston Commercial Zone and define East Baytown as being within the Baytown Commercial Zone the applications, in effect, seek authorization to operate from the City of Houston. It is therefore urged that, notwithstanding the fact that the City of Baytown is practically contiguous to the City of Houston, the notice as published was not sufficient to apprise it of the real scope of the proposed certificates of public convenience and necessity.

It is well established both by statute and judicial precedent that publication in the Federal Register is legally deemed notice to all interested persons. 44 U.S.C. § 1507; Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). *See* 49 C.F.R. § 1130.1(b). The summary of notices published, including applications for certificates of public convenience and necessity, are necessarily required to be concise. Braswell Motor Freight Lines v. United States, 274 F.Supp. 674 (N.D. Tex.1967) (three-judge court). However, due process of law requirements dictate that interested persons be afforded proper notice of administrative proceedings. Brandt v. Hickel, 427 F.2d 53 (9th Cir. 1970). Accordingly, the notice as published must reasonably apprise any interested person of the issues involved in the proceeding. Refrigerated Transport Co. v. United States, 313 F.Supp. 880 (N.D.Ga.1970) (three-judge court); *see* 5 U.S.C. § 554(b); 49 U.S.C. § 305(e). Such notice is generally considered adequate in the absence of a showing that an interested person was misled. Cella v. United States, 208 F.2d 783 (7th Cir. 1953), cert. denied, 347 U.S. 1016, 74 S.Ct. 864, 98 L.Ed. 1138 (1954).

The contentions of plaintiff are devoid of merit. The applications filed, the notice as published and the Commission's order related solely to an authorization to operate motor vehicles as common carriers from Baytown and East Baytown. The regulation which defines the scope of the Houston Commercial Zone is clear and concise and is certainly reasonable notice to any interested person. *See* Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Additionally, plaintiff is a certificated motor carrier operating from the Houston Commercial Zone with many years of experience. It obviously cannot be treated as an outsider to the Commission's rules of practice and regulations. It is not unreasonable to charge it with knowledge of the scope of its own authorization. *See* Smith &

Solomon Trucking Co. v. United States, 255 F.Supp. 243 (D.N.J.1966) (three-judge court). *Compare* Georgia-Florida-Alabama Transp. Co. v. United States, 290 F.Supp. 764 (M.D.Ala.1968) (three-judge court); Pinkett v. United States, 105 F.Supp. 67 (D.Md.1952) (three-judge court). Similarly, plaintiff's contention that it had a right to receive notice of the hearing as an interested person, even though it had not seasonably protested or petitioned for intervention in the proceedings in order to achieve party status is without merit. Spanish International Broadcasting Co. v. Federal Communications Commission, 128 U.S.App.D.C. 93, 385 F.2d 615 (1967); Southern Louisiana Area Rate Cases v. Federal Power Commission, 428 F.2d 407 (5th Cir.), modified on other grounds, 444 F.2d 125 (5th Cir.), cert. denied, 400 U.S. 950, 91 S.Ct. 241, 27 L.Ed.2d 257 (1970). *See* 5 U.S.C. § 554(b).

## B.

## THE COMMISSION'S GENERAL RULES OF PRACTICE—INTERVENTION

Intervention in the administrative proceedings was implicitly left to the Commission's own rules by the Interstate Commerce Act. The Commission's rules as to intervention govern so long as they are in compliance with the basic due process of law requirements and the procedural requirements of the Administrative Procedure Act, 5 U.S.C. § 551(3). *See* Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940). Special Rule 247 of the Commission's General Rules of Practice, which deals with intervention, provides that:

Rule 73 relating to participation without intervention is inapplicable to applications subject to this section, except with respect to those persons seeking to intervene in support. No person who fails to file a protest as provided in these rules will be permit-

ted to intervene in opposition in a proceeding except upon a showing of substantial reasons in a petition submitted in accordance with Rule 72.

49 C.F.R. § 1100.247(h). Rule 72, 49 C.F.R. § 1100.72, provides that a petition for leave to intervene must be filed prior to the time of the hearing "but not after except for good cause shown." This rule further provides that "[i]f leave is granted the petitioner thereby becomes an intervenor and a party to the proceeding."

Special Rule 247 was interpreted in a case very similar to that now before the Court. In Smith & Solomon Trucking Co. v. United States, 255 F.Supp. 243 (D.N.J.1966) (three-judge court), notice of the application for certificate of public convenience and necessity was duly published in the Federal Register pursuant to Special Rule 247. No protests were timely filed within the required thirty day period. Accordingly, no hearing was held, and the order became effective on May 20, 1965. On July 1, 1965, the plaintiff attempted unsuccessfully to intervene to assert untimely exceptions to the order and to request reconsideration of the Commission's order. The Commission, Division One, acting as an Appellate Division, denied the petition because, as in the instant case, plaintiff had failed to present sufficient reason for failure to file a timely protest and no sufficient cause appeared for permitting plaintiff to intervene or for giving additional consideration to the petitioner's pleadings. The Court on review held that the Commission did not abuse its discretion since plaintiff's untimely petition to intervene had been properly denied. In reference to the plaintiff's attack upon the propriety of Special Rule 247 the Court indicated that:

> [W]e are . . . being asked to completely ignore and brush aside the Commission's General and Special Rules of Practice of many years standing relating to the handling of application proceedings under modified procedure, the reasonable time limitations fixed by the Rules for the filing of protests to such applications, and to condone and excuse the failure of S. & S., for reasons that are patently insufficient, to comply with said Rules. This we are unwilling to do.

255 F.Supp. at 253. It was also held that the Commission had ample justification, viewing the record as a whole, to refuse to reopen the record and reconsider the applications on their merits.

Similarly, in Easton Utilities Commission v. Atomic Energy Commission, 137 U.S.App.D.C. 359, 424 F.2d 847, 851 (1970), it was indicated that:

> We have long and frequently passed upon the limitations of judicial review which we exercise in agency cases involving failure of potential or possible parties to fully exercise, utilize and protect their rights to participate in administrative procedures. More than thirty years ago, concerned with the problem of what must be done by "an interested person to act affirmatively to protect himself" in agency proceedings, we said that "[s]uch a person should not be entitled to sit back and wait until all interested persons who do so act have been heard, and then complain that he has not been properly treated. To permit such a person to stand aside and speculate on the outcome . . . and then permit the whole matter to be reopened in his behalf, would create an impossible situation."

■ Guidance in establishing the proper standard for scrutinizing petitions for intervention in an administrative proceeding can be found by examining Rule 24, Fed.R.Civ.P., which provides for intervention in civil actions. The propriety of intervention under Rule 24 generally turns upon (1) the timeliness of the petition, (2) the resulting prejudice to the existing parties and (3) whether or not the petition seeks to reopen and relitigate any issue previously determined. McDonald v. E. J. Lavino Co., 430 F.2d 1065 (5th Cir. 1970); see 7A C. Wright and A. Miller, Federal

Practice and Procedure §§ 1901–1923 (1972); 3B Moore's Federal Practice ¶ 24.13 [1] (2d ed. 1969); Note, The Requirement of Timeliness Under Rule 24 of the Federal Rules of Civil Procedure, 37 Va.L.Rev. 863 (1951); Annot., 5 A. L.R.Fed. 518 (1970).

 The proffered justification of plaintiff for untimely filing of its petition for intervention was essentially that it lacked adequate notice of the proceedings. It is asserted that through no fault of its own it did not have ready access to the Federal Register and, additionally, that the notice as published was inadequate to apprise it of the intended scope of the certificates of public convenience and necessity. As previously indicated, these reasons are insufficient as a matter of law. Clearly, plaintiff's attempt to intervene and relitigate the issues previously determined by the Commission was untimely with the resulting unnecessary delay in issuance of the certificates to the detriment of the existing parties and without justifiable cause. As a result, this Court cannot conclude that the Commission's action, which was in full compliance with its rules of practice, in denying the intervention, was arbitrary or an abuse of administrative discretion.

## C.

### THE COMMISSION'S GENERAL RULES OF PRACTICE—INTERESTED PARTIES

The plaintiff's exceptions to the Commission's recommended order, its petition seeking a rehearing and reconsideration of the order and its petition seeking a finding that an issue of general transportation importance was involved were rejected by the Commission. They were rejected because plaintiff was not a party to the proceedings, since its untimely petition to intervene had been de-nied and because plaintiff failed to advance sufficient grounds to warrant further consideration of the recommended order and order as adopted by the Commission.

 While it is fundamental that interested persons to an administrative proceeding must be afforded a basic opportunity to be heard, this right is not unlimited. *See* Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940). In this instance, as previously indicated, plaintiff was denied a right to intervene and thus failed to attain party status in the proceedings. The petitions in issue under the rules of the Commission could be submitted only by parties to the proceedings.[4] *See* 49 U.S.C. §§ 17(5), 305(e); 5 U.S.C. § 557(c); *see also* Alleghany Corp. v. Breswick & Co., 353 U.S. 151, 77 S.Ct. 763, 1 L.Ed.2d 726 (1957). The plaintiff was not a party and by virtue of its own business laxity was not entitled to attain such status. Easton Utilities Commission v. Atomic Energy Commission, 137 U.S.App.D.C. 359, 424 F.2d 847 (1970). The Commission must be granted discretion to consider "[o]rderliness, expedition, and finality in [its] adjudicating process" when untimely petitions are presented to it without a showing of substantial cause. *Valley Telecasting Co. v. Federal Communications Commission*, 118 U.S.App.D.C. 410, 336 F.2d 914, 917 (1964). In Smith & Solomon Trucking Co. v. United States, 255 F.Supp. 243, 249–250 (D. N.J.1966) (three-judge court), it was indicated that:

Notwithstanding the foregoing admissions and concessions, and the factual situation disclosed by the record, S. & S. nevertheless contends that it has standing in this Court, as an "aggrieved party" or "party in interest", to challenge the validity of the Com-

---

4. Exceptions to a recommended order of the Commission are governed by Rules 96 and 97, 49 C.F.R. § 1100.96–97; petitions seeking a rehearing or reconsideration of an order of the Commission and petitions seeking a finding that an issue of general transportation importance is involved are governed by Rule 101, 49 C.F.R. § 1100.101.

mission's basic order of May 20, 1965, and those that followed on October 19, 1965 and January 14, 1966. There is no merit to this contention. The plain fact is that S. & S. was not denied "standing" to participate in the Whitten application proceedings. The Commission had no reason or occasion to rule on whether S. & S. was an "aggrieved party" or "party in interest" in these proceedings. S. & S. was not permitted to intervene because it was late in filing its protest and failed to give the Commission any satisfactory reason to excuse the late filing. Intervention was also denied because S. & S. advanced no sufficient grounds to warrant reconsideration of the Commission's order of May 20.

Similarly, petitions for rehearing or reconsideration are addressed to the discretion of the Commission, and a denial of such pleadings is not reviewable absent a clear abuse of discretion by this administrative agency. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944); Braswell Motor Freight Lines, Inc. v. United States, 275 F.Supp. 98 (W.D.Tex.1967) (three-judge court), aff'd per curiam, 389 U.S. 569, 88 S.Ct. 692, 19 L.Ed.2d 779 (1968).

■ In view of the existing circumstances in this case, the dismissal of the petitions was not arbitrary or otherwise beyond the ambit of the Commission's authority. Spanish International Broadcasting Co. v. Federal Communications Commission, 128 U.S.App.D.C. 93, 385 F.2d 615 (1967). See Smith & Solomon Trucking Co. v. United States, 255 F.Supp. 243 (D.N.J.1966) (three-judge court); National Trailer Convoy, Inc. v. United States, 293 F.Supp. 634 (N.D. Okl.1968) (three-judge court); Braswell Motor Freight Lines, Inc. v. United States, 275 F.Supp. 98 (W.D.Tex.1967) (three-judge court), aff'd per curiam, 389 U.S. 569, 88 S.Ct. 692, 19 L.Ed.2d 779 (1968).

## VI.

## THE SUBSTANTIVE ISSUES

### A.

### THE SUBSTANTIALITY OF THE EVIDENCE, AND THE ADEQUACY OF THE FINDINGS

■ The Interstate Commerce Act has clearly placed the duty and responsibility upon the Commission to determine the issue of public convenience and necessity upon receipt of applications for additional motor carrier authorization. Since the term public convenience and necessity is not defined by the statute, the Commission was implicitly given administrative discretion to draw its own conclusions as to the basic public interest from an "infinite variety of circumstances which may occur in specific instances." Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 65 S. Ct. 1490, 1493, 89 L.Ed. 2051 (1945). However, the ultimate findings in this respect must be predicated on proper statutory criteria and amply supported by factual findings. Carl Subler Trucking, Inc. v. United States, 313 F.Supp. 971 (S.D.Ohio 1970) (three-judge court); Florida East Coast Railway Co. v. United States, 242 F.Supp. 490 (M.D. Fla.) three-judge court), aff'd per curiam, 382 U.S. 161, 86 S.Ct. 316, 15 L. Ed.2d 228 (1965); T.S.C. Motor Freight Lines, Inc. v. United States, 186 F.Supp. 777 (S.D.Tex.1960) (three-judge court), aff'd per curiam, 366 U.S. 419, 81 S.Ct. 1356, 6 L.Ed.2d 387 (1961). See 5 U.S. C. § 557(c); Anglo-Canadian Shipping Co. v. Federal Maritime Commission, 310 F.2d 606 (9th Cir. 1962).

■ The report and recommended order of the hearing examiner which was ultimately adopted by the Commission contains ample findings that the granting of the applications was in the public interest. These findings reflect that there was a substantial present and future need for additional motor carrier service and that there necessarily was

an inadequacy of existing service. Further, no evidence was presented at the hearing which would indicate that any existing motor carrier would be adversely affected by the issuance of additional certificates of public convenience and necessity. *See* United States v. Dixie Highway Express, Inc., 389 U.S. 409, 88 S.Ct. 539, 19 L.Ed.2d 639 (1967); Younger Brothers, Inc. v. United States, 238 F.Supp. 859 (S.D.Tex.1965) (three-judge court); St. Johnsbury Trucking Co. v. United States, 326 F.Supp. 938 (D.Vt.1971) (three-judge court); Consolidated Freightways Corp. v. United States, 289 F.Supp. 126 (N.D.Cal.1968) (three-judge court); Auclair Transp., Inc. v. United States, 221 F.Supp. 328 (D.Mass.1963) (three-judge court), aff'd per curiam, 376 U.S. 514, 84 S.Ct. 966, 11 L.Ed.2d 968 (1964).

The hearing examiner found that each of the twelve applicants was an established motor carrier of iron and steel articles. The United States Steel Corporation had recently opened the Texas Works steel plant located adjacent to certain annexed areas of Baytown, Texas known as East Baytown which are within the Houston Commercial Zone. Some of these carriers were already operating from the plant in reliance upon their authority to transport articles from the Houston Commercial Zone.

The hearing examiner concluded that the Texas Works steel plant would become a fully integrated steel plant in the near future which would produce and ship a full complement of iron and steel articles. It was indicated that the plant then shipped approximately forty-five percent of its production by motor carriers and that in view of the loading facilities at the plant future shipments would most likely rely heavily upon motor carriers. The hearing examiner also noted that reasonable projections at the time of the hearing reflected that in 1970 the plant would ship approximately 200,000 tons of steel plate and flat bars and that by 1976 the volume would ex-

ceed 650,000 tons a year. Approximately 60 percent of this production would move in interstate commerce to points in Arkansas, Kansas, Louisiana, Mississippi, New Mexico and Oklahoma. Roughly 40 percent of these shipments would be by motor carriers. Additionally, the United States Steel Corporation utilized a warehouse in Houston where approximately 300 shipments of iron and steel articles originated in the first eight months of 1970. However, a new loading dock at the Texas Works plant was contemplated to replace the Houston facility as a warehouse shipment point. The plant production would require between 20 and 150 motor carriers per day to handle outgoing shipments from this facility.

It was further determined at the hearing that in addition to the steel tonnage originating from the Texas Works plant by motor carrier considerable steel tonnage also originated from other sources in the Houston area. Two other major steel producers which are located in the Houston area shipped considerable steel tonnage by motor carrier. Similarly, the Port of Houston, which is the fourth largest port in the United States in terms of the amount of iron and steel articles imported, also shipped considerable steel tonnage by motor carrier. The applicant motor carriers were also involved in transportation of iron and steel articles from these sources.

These findings are supported by substantial evidence as reflected by viewing the uncontradicted evidence adduced at the hearing before the Commission's hearing examiner on September 16, 1970. Each applicant presented adequate evidence as to its capacity to perform the proposed service, and the intervenor, United States Steel Corporation, presented ample evidence as to its present and future operating needs.

Similarly, the Commission's order denying plaintiff's petitions recited adequate findings and conclusions. This order stated that plaintiff had failed (1)

to show sufficient cause to participate as a party in accord with Rule 72 and Special Rule 247 and (2) to show sufficient cause for the Commission to give additional consideration to the petitions. Clearly these findings articulated the basic requisites essential to the statutory validity of the order. *See* Alabama Great Southern R. R. v. United States, 340 U.S. 216, 71 S.Ct. 264, 95 L.Ed. 225 (1951); T. S. C. Motor Freight Lines, Inc. v. United States, 186 F.Supp. 777 (S.D.Tex.1960) (three-judge court), aff'd per curiam, 366 U.S. 419, 81 S.Ct. 1356, 6 L.Ed.2d 387 (1961); Brooklyn Eastern District Terminal v. United States, 302 F.Supp. 1095 (E.D.N.Y. 1969) (three-judge court).

### B.

### THE PROPRIETY OF THE SCOPE OF AUTHORIZATION GRANTED BY THE COMMISSION

■■ The authorization granted by the order of the Commission which led to the issuance of the certificates of public convenience and necessity upon compliance by the carriers with the order was not in excess of that sought by the original applications. *Compare* Georgia-Florida-Alabama Transp. Co. v. United States, 290 F.Supp. 764 (M.D. Ala.1968) (three-judge court). The applications sought common carrier authorization from Baytown and East Baytown, and the Commission's order and the certificates of public convenience and necessity reflect that such authority was exactly what was granted. The fact that authority to serve Baytown includes implied authority to serve all points within the commercial zone of that municipality does not grant authority beyond what was sought. *See* 49 C.F.R. § 1048.34; Byers Transp. Co. v. United

States, 310 F.Supp. 1120 (W.D.Mo.1970) (three-judge court); *see also* Commercial Zones and Terminal Areas, 45 M.C. C. 21 (1965).

■■■ The Commission was not required to limit the authorization to the plant site of Texas works. The established rule is that:

> The Commission, both for conceptual and practical reasons, adheres to the course of imposing plant site restriction on common carrier certificates only in the rare and exceptional case in which clear and convincing evidence demonstrates that such a limitation is required in the public interest.

Younger Brothers, Inc. v. United States, 238 F.Supp. 859, 861 (S.D.Tex.1965) (three-judge court). *Accord* Chemical Express Extension-Douro, Tex., 89 M.C. C. 452 (1962); Fox-Smythe Transp. Co. Extension-Oklahoma, 106 M.C.C. 1 (1967). *See* 32 Fed.Reg. 16084 (1968). No such evidence was presented in this case. However, evidence was presented which would indicate that general authorization from the Houston Commercial Zone was more desirable and clearly in the public interest. Therefore, this Court cannot conclude that the Commission abused its discretion in not imposing a plant site restriction on the certificates.

Accordingly, upon a review of the entire record, the Court finds that there is substantial evidence to support the Commission's findings and that the Commission applied proper legal standards in granting the certificates of public convenience and necessity and in denying plaintiff's petitions.

Plaintiff's complaint will be dismissed. The clerk will notify counsel to draft and submit an appropriate order.